[Cite as *U.S. Bank Natl. Assn. v. MMCO, L.L.C.*, 2021-Ohio-4605.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

U.S. BANK NATIONAL ASSOCIATION, :
AS TRUSTEE,

                            :

       Plaintiff-Appellee,

                            :           No. 110246

       v.

                            :

MMCO, L.L.C., ET AL.,

                            :

       Defendant-Appellant.

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART, REVERSED IN PART,
                  AND REMANDED
**RELEASED AND JOURNALIZED:** December 30, 2021

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-16-865052

---

### *Appearances:*

Calfee, Halter & Griswold L.L.P., Christopher S. Williams,
Ronald M. McMillan, and Xin Wen, *for appellee.*

Porter, Wright, Morris & Arthur, L.L.P., Jeremy A.
Mercer, L. Bradfield Hughes, and Syed Ahmadul Huda,
*for appellants.*

MARY J. BOYLE, A.J.:

{¶ 1} This case began as a foreclosure action involving the Rose Building, a

381,176-square-foot commercial office building on East 9th Street in Cleveland,

Ohio. Medical Mutual of Ohio, the sole tenant of the Rose Building, intervened and brought numerous claims against three individuals and their various corporate entities. The foreclosure claim has been resolved, and this appeal involves Medical Mutual's claims.

{¶ 2} Crossclaim-defendants-appellants (the GFW Trust and MMCO, L.L.C.) and third-party-defendants-appellants (BFG Holdings 2000, L.L.C.; the Bentley Forbes Group, L.L.C.; the GFW II Trust; C. Frederick Wehba ("Wehba Sr."); Susan D. Wehba ("Ms. Wehba"); and C. Frederick Wehba II ("Wehba Jr.")) appeal the trial court's orders (1) granting summary judgment in favor of Medical Mutual for fraud, piercing the corporate veil, and Wehba Jr.'s individual liability, (2) granting Medical Mutual leave to file a summary judgment motion against Wehba Jr. in his individual capacity, and (3) striking their cross-motion for summary judgment regarding Wehba Jr.'s individual liability.[1] The appellants (collectively, the "Wehba defendants") raise four assignments of error for our review:

> 1. The trial court erred in granting summary judgment to Medical Mutual and denying Appellants' motion for summary judgment on Medical Mutual's fraud claim.
>
> 2. The trial court improperly pierced the corporate veil because it imposed an adverse inference and applied collateral estoppel instead of applying the *Belvedere/Dombrowski* three-prong test.
>
> 3. The trial court erred in granting Medical Mutual's motion for leave to file a summary judgment motion against Wehba, Jr. in his individual

---

[1] The other parties previously involved in this case were U.S. Bank NA, the Ohio Department of Jobs and Family Services, the Cuyahoga County Treasurer, and Mitsuwa Corporation. These parties are not involved in this appeal.

capacity, and further erred in granting the summary-judgment motion in finding Wehba, Jr. individually liable.

4. The trial court erred in striking Wehba, Jr.'s cross-motion for summary judgment and declining to enter judgment in favor of Wehba, Jr..

{¶ 3} Finding merit to the first assignment of error, we affirm in part and reverse in part the trial court's judgments.

## I.    Procedural History and Factual Background

{¶ 4} In June 2016, U.S. Bank NA filed a foreclosure complaint against MMCO, the GFW Trust, the Ohio Department of Jobs and Family Services, Mitsuwa Corporation, and the Cuyahoga County Treasurer. U.S. Bank alleged that in 2005, MMCO entered a commercial loan with Bank of America for $52,715,219 to purchase the Rose Building from Medical Mutual. To guarantee MMCO's payment of the note, the GFW Trust joined MMCO in executing a loan agreement and guaranty. The complaint states that Bank of America assigned the loan documents to Wells Fargo Bank, N.A., who assigned them to U.S. Bank.

{¶ 5} U.S. Bank alleged that the loan matured on January 1, 2016, and the entire balance of the loan became "fully due and payable." U.S. Bank alleged that MMCO and the GFW Trust had defaulted on the loan and, as of May 1, 2016, they owed the principal amount of $47,370,663.31, plus interest, default interest, late fees, document preparation fees, special servicing fees, attorney fees, "and other amounts" under the loan documents. U.S. Bank also alleged that MMCO violated the terms of the loan documents by (1) replacing MMCO's manager, (2) transferring 100 percent of MMCO's membership interests in itself to "various" other trusts and

limited liability companies, and (3) granting an interest in the Rose Building to defendant Mitsuwa Corporation, a California company.

{¶ 6} U.S. Bank brought claims for (1) the amounts due under the note against both MMCO and the GFW Trust as the guarantor, (2) foreclosure, (3) the assignment of rents that MMCO had been collecting, (4) an accounting for all rental payments that MMCO had collected after it defaulted on the loan, and (5) conversion for the rents that MMCO had collected and distributed to other entities. U.S. Bank's requested relief included (1) amounts due under the loan, (2) a declaratory judgment that U.S. Bank had a first-priority lien after the Cuyahoga County Treasurer, and (3) that the court appoint a receiver to collect all rents. The trial court referred the case to a magistrate, who scheduled a hearing regarding the appointment of a receiver.

{¶ 7} The following month, Medical Mutual filed a motion to intervene as a defendant in the action and for leave to file (1) an answer to U.S. Bank's complaint, (2) a counterclaim against U.S. Bank, (3) a crossclaim against MMCO and the GFW Trust, and (3) a third-party complaint against BFG Holdings, the Bentley Forbes Group, the GFW II Trust, Wehba Sr., Ms. Wehba individually and as a co-trustee of the GFW and GFW II Trusts, and Wehba Jr. individually and as a co-trustee of the GFW and GFW II Trusts. Medical Mutual argued that the court should allow it to intervene because it should "be permitted to refrain" from making rent payments to a receiver and instead pay rent to the court or another account. Medical Mutual maintained that MMCO and its "alter-egos and affiliates" had defrauded Medical Mutual and owe Medical Mutual over $4 million.

**{¶ 8}** Medical Mutual attached to its motion to intervene a copy of its combined counterclaim, crossclaim, and third-party complaint. Medical Mutual alleged that in 2000, it engaged in a "sale-leaseback transaction" with MMCO in which Medical Mutual sold the Rose Building (and two other properties not at issue here) to MMCO for over $47 million, and MMCO would lease the building back to Medical Mutual. The pleading states that MMCO financed part of the purchase with a promissory note in favor of Medical Mutual in the amount of $12,370,000, plus interest with a rate of 7.25% per year. Wheba Jr. executed the note on behalf of BFG Holdings, and the following parties guaranteed the note: Ms. Wehba and Wehba Jr., as trustees of the GFW Trust (later replaced by the GFW II Trust); Wehba Sr. and Ms. Wehba individually; and Bentley Forbes. Medical Mutual alleged that in the guaranty agreement, the guarantors promised Medical Mutual that the GFW Trust would maintain a net worth of at least $25 million in the trust as long as the note remained unpaid.

**{¶ 9}** Medical Mutual claimed that MMCO agreed to pay Medical Mutual the $12,370,000 in monthly installments of $97,769.51 for 20 years. Medical Mutual would also pay MMCO $419,968.33 per month for rent. The pleading states that the note was subject to a "lockbox agreement" entered between Medical Mutual and MMCO. Under the agreement, Medical Mutual would pay its $419,968.33 for rent into a lockbox, and upon receipt of the rent payment, MMCO (on behalf of BGF Holdings) would use funds from the rent payment to make the $97,769.51 note payment to Medical Mutual. In 2006, Medical Mutual and MMCO replaced the

"lockbox agreement" with a "standing wire agreement," under which MMCO agreed to instruct its bank to wire the note payment to Medical Mutual on the first day of each month.

{¶ 10} Medical Mutual alleged that in April 2016, Wehba Sr. sent an email informing Medical Mutual that the "lender for the Rose Building[, U.S. Bank,] is going to put a receiver in the next week or so and that we will not be able to make any payments on the note." Medical Mutual attached a copy of the email to its complaint. Wehba Sr. also states in the email that "we" could "make the note payments using [t]ax [b]enefits." Medical Mutual claimed that MMCO made no note payments after June 2016.

{¶ 11} The pleading states that after MMCO defaulted on the note, Medical Mutual learned that BFG Holdings had been voluntarily dissolved in September 2013 and that in June 2016, Wehba Sr. "sold his Beverly Hills mansion" to settle litigation with Mitsuwa in California, *Mitsuwa Corp. v. Wehba*, Los Angeles Superior Court No. BC 463929.

{¶ 12} Medical Mutual alleged that, "based in part on" an opinion in the Mitsuwa proceeding in California, the Wehba family had consistently "structured deals to buy properties in which a seller would become the tenant thereof through a leaseback agreement," treat the "real estate business as their own without regard for the distinction between the entities they created and their own personal affairs," and "pay themselves millions of dollars from the entities involved with the result that, eventually, the obligor entities defaulted on the notes in favor of Mitsuwa." Medical

Mutual stated that it believed the Wehba defendants had engaged in "the same type of misconduct in connection with the Rose Building transaction[.]"

{¶ 13} Medical Mutual claimed that it sent notices to BFG Holdings and the guarantors that BFG Holdings was in default under the note, and Medical Mutual attached copies of the notices to its complaint. Medical Mutual accelerated the remaining balance due on the note, demanding payment of $4,422,727.86. Medical Mutual stated that the guarantors had failed to honor their obligation. Medical Mutual alleged that "[i]t would work a substantial injustice" if Medical Mutual were required to continue to pay its $419,968.33 monthly rent to MMCO when MMCO still owed Medical Mutual over $4 million and had made clear that it would not make any further note payments.

{¶ 14} Medical Mutual asserted seven claims for relief: (1) a declaration that Medical Mutual was permitted to withhold its rent payments to MMCO; (2) breach of promissory note; (3) breach of guaranty; (4) fraud and fraudulent concealment; (5) fraudulent transfers; (6) unjust enrichment; and (7) set-off. Medical Mutual also demanded a jury trial.

{¶ 15} Medical Mutual attached to its pleading a verification executed by a Medical Mutual employee. The employee stated that the facts in the pleading were based on his personal knowledge and "the institutional knowledge of Medical Mutual," and to the best of his "knowledge, information, and belief, all of the facts as alleged are true[.]" Medical Mutual also attached 12 exhibits, including the lease between MMCO and Medical Mutual, the September 2000 promissory note for

$12,370,000, the September 2000 guaranty agreement, the lockbox agreement, the standing wire agreement, and a 2016 news article describing the crash of Bentley Forbes's real estate business.

{¶ 16} With its pleading, Medical Mutual filed a motion for a temporary restraining order and preliminary and permanent injunction. It requested one of the following alternative orders regarding its rental payments: (1) an order that an account be established into which Medical Mutual could pay its rent and from which the corresponding note payment would be transmitted back to Medical Mutual, (2) an order allowing Medical Mutual to pay its rent to the court, (3) an order requiring the Wehba defendants to pay Medical Mutual the $97,769.51 note payment from each of Medical Mutual's $419,968.33 rent payments, (4) an order that Medical Mutual's rent payments would each be reduced by $97,769.51 until the note balance was paid in full, or (5) an order allowing Medical Mutual to stop paying rent until the amount of its rental payments equaled the total amount of damages that would be awarded to Medical Mutual from the Wehba defendants.

{¶ 17} The trial court granted Medical Mutual's motion to intervene. After briefing and a hearing, the trial court appointed a receiver and denied Medical Mutual's motion for a temporary restraining order and preliminary injunction. No party filed an objection.

{¶ 18} The following month, in August 2016, Mitsuwa filed an answer to U.S. Bank's complaint and a motion for leave to record a mortgage that predated the receivership. Mitsuwa maintained that pursuant to the terms of a November 2015

settlement agreement in the California proceeding, "Mitsuwa received an interest in any proceeds from the sale of the [Rose Building] junior only to the mortgage of the first lienholder, U.S. Bank." Mitsuwa explained that, to secure its rights to the proceeds from any sale of the Rose Building, "on November 2, 2015, MMCO executed the Mitsuwa Mortgage to encumber" the Rose Building. Mitsuwa attached to its motion a copy of the settlement agreement and the mortgage. The settlement agreement states that Mitsuwa would not record the mortgage unless the defendants in that action (which included Wehba Sr. individually, Ms. Wehba individually and as trustee of the GFW and GFW II Trusts, Wehba Jr. individually and as trustee of the GFW and GFW II Trusts, Bentley Forbes, and MMCO) defaulted under the settlement agreement. Mitsuwa maintained that the defendants in the California action defaulted under the settlement agreement in January 2016, and Mitsuwa sought leave to record its mortgage.

{¶ 19} U.S. Bank opposed Mitsuwa's motion, arguing that the motion was untimely and that Mitsuwa was an unsecured creditor because it did not record the mortgage. Medical Mutual also opposed the motion, emphasizing that Mitsuwa had notice that U.S. Bank's mortgage prohibited further mortgages or liens on the Rose Building. MMCO also filed a motion in opposition to Mitsuwa's motion, maintaining that it "is precluded by the terms of the existing receivership order." Nearly a year later (in August 2017), the trial court denied Mitsuwa's motion.

{¶ 20} In November 2016, Medical Mutual filed a motion to compel the Wehba defendants to produce discovery. Medical Mutual maintained that the

Wehba defendants had not responded to any of its first sets of interrogatories and document requests despite two extensions of time. The Wehba defendants' opposition to the motion to compel states that they served discovery responses simultaneously with their opposition. Medical Mutual filed a reply, arguing that the discovery responses were incomplete. Eight months later, the trial court granted the motion to compel, noting that the discovery had been outstanding since November 2016. The trial court ordered the Wehba defendants to produce the requested discovery by the following month.

{¶ 21} In July 2017, a year after the trial court appointed the receiver, MMCO and the GFW Trust filed a motion to vacate the appointment of the receiver. U.S. Bank, Medical Mutual, and the receiver filed oppositions. MMCO and the GFW Trust also sought leave to file an amended answer to U.S. Bank's complaint and a counterclaim against U.S. Bank for breach of contract and declaratory judgments that R.C. Chapter 2735 is unconstitutional. MMCO and the GFW Trust argued that they learned the receiver had agreed to sell and Medical Mutual had agreed to purchase the Rose Building through a receivership sale pursuant to R.C. Chapter 2735. U.S. Bank filed an opposition. A few weeks later, the receiver filed a motion for authority to sell the Rose Building to Medical Mutual for $37,900,000.

{¶ 22} In August 2017, the trial court denied MMCO and the GFW Trust's motion to vacate the order appointing the receiver, noting that prior counsel for MMCO and the GFW Trust had consented to the receiver and that the order

appointing the receiver was not appealed within 30 days. The trial court also denied their motion for leave to file an amended answer and counterclaim against U.S. Bank. The trial court noted that MMCO and the GFW Trust had "ample time" to amend their pleadings, they failed to attend or retain counsel for three "critical" court dates between April 2017 and June 2017, and they had "also delayed in the past" by failing to respond to "basic" discovery requests. The trial court authorized the receiver sale after briefing and a hearing. The trial court entered a stipulated entry of in rem judgment and decree of foreclosure.

{¶ 23} Also in August 2017, U.S. Bank voluntarily dismissed its claims against the Ohio Department of Job and Family Services, noting that the lien the department had recorded against the property had been released in October 2016. U.S. Bank also filed a motion pursuant to Civ.R. 42(B) to bifurcate Counts 2 through 6 of Medical Mutual's counterclaim (Medical Mutual's claims against the Wehba defendants for breach of the guaranty agreement, fraud and fraudulent concealment, fraudulent transfers, and unjust enrichment) from the other claims in the lawsuit. The trial court granted the unopposed motion.

{¶ 24} The sale of the Rose Building to Medical Mutual closed in September 2017, and the net proceeds after closing costs and receiver expenses were $36,501,832.50. The receiver disbursed the net proceeds to U.S. Bank to satisfy, in part, its in rem judgment. The trial court terminated the receivership the following month.

{¶ 25} In December 2017, U.S. Bank filed a motion to dismiss its remaining claims that had not been resolved by the trial court's order of in rem judgment and decree of foreclosure. The trial court granted the motion. The trial court's judgment entry states in part that Count 3 of U.S. Bank's complaint (its claim against Mitsuwa and the Cuyahoga County Treasurer for foreclosure of mortgage and security interest) "was resolved by virtue of the Foreclosure Judgment." Therefore, the only claims remaining in the action after the trial court granted U.S. Bank's motion to dismiss were Medical Mutual's claims against the Wehba defendants for breach of the promissory note, breach of the guaranty, fraud and fraudulent concealment, fraudulent transfers, unjust enrichment, and set-off.

{¶ 26} In January 2018, Medical Mutual filed a motion for partial summary judgment against the "third-party defendants": Bentley Forbes, the GFW II Trust, Wehba Sr., Ms. Wehba "individually and in her capacity as Co-Trustee of the GFW II Trust," and Wehba Jr. "in his capacity as Co-Trustee of the GFW II Trust." Medical Mutual sought summary judgment regarding only its claim for breach of guaranty. Medical Mutual simultaneously filed a motion for "sanctions and/or to compel discovery" against the Wehba defendants for failure to comply with the trial court's order compelling complete discovery responses to Medical Mutual's first set of discovery requests.

{¶ 27} Six months later, in June 2018, Medical Mutual filed a second motion for summary judgment on its claims for breach of promissory note, fraud and fraudulent concealment, and unjust enrichment against all of the Wehba defendants

except for Wehba Jr. in his individual capacity: MMCO, BFG Holdings, Bentley Forbes, the GFW Trust, the GFW II Trust, Wehba Sr., Ms. Wehba "individually and in her capacity as Co-Trustee of the GFW II Trust," and Wehba Jr. "in his capacity as Co-Trustee of the GFW II Trust. Medical Mutual argued in part that BFG Holdings breached the promissory note and the "Wehba Enterprise Defendants" were liable for the breach as alter egos of each other.

{¶ 28} In support of its argument that the Wehba defendants are alter egos of each other, Medical Mutual cited to an April 2016 "Tentative Statement of Decision" from the California proceeding involving Mitsuwa and attached the statement as an exhibit to its summary judgment motion. The statement provides that the case arose from Mitsuwa's sale of two properties to corporations formed by members of the Wehba family, the corporations defaulted on the promissory notes, Mitsuwa obtained default judgments against them, and Mitsuwa was unable to collect from them. The defendants in the Mitsuwa case included the following parties that Medical Mutual also named as defendants in the present case related to the Rose Building: MMCO, Bentley Forbes, Wehba Sr., Wehba Jr. individually and as trustee of the GFW and GFW II Trusts, and Ms. Wehba individually and as trustee of the GFW and GFW II Trusts.

{¶ 29} The *Mitsuwa* court explained that the Wehba family conducted its business "through a number of inter-related entities that the Wehbas commonly referred to as 'Bentley Forbes.'" They "structured deals to buy properties in which a seller would become the tenant thereof through a leaseback agreement." One of the

Bentley Forbes entities would transfer title to an L.L.C. formed by the Wehbas, and another L.L.C. formed by the Wehbas would receive the rent that the sellers paid for the lease. The opinion states that Bentley Forbes used this method to acquire the two properties from Mitsuwa. The *Mitsuwa* court noted that Mitsuwa presented substantial testimony and documentary evidence to establish a "unity of interest" between the Wehbas and their L.L.C.s. The *Mitsuwa* court found that the "Wehbas continually and consistently treated their real estate business as their own without regard for the distinction between the entities they created and their own personal affairs":

> [T]here was common ownership, direction and governance, common use of employees and premises, a lack of regard for formalities (even when taking into account the less formal nature of LLCs), a lack of consistent accounting, whether periodic or regular, a lack of separation of support services, the common exercise of executive functions and decisions by Wehba family members, the transfer of assets and use of funds regardless of which entity held them, personal use of business assets and the special distributions of funds, often for the use by another of the business entities and, in important instances, leaving an obligor entity without funds to satisfy its obligations.

{¶ 30} The *Mitsuwa* court explained that the disregard for corporate formalities allowed the Wehbas "to pay themselves millions of dollars from the entities involved with the result that, eventually, the obligor entities defaulted on the notes in favor of Mitsuwa." The *Mitsuwa* court found that Wehba Sr. individually, Wehba Jr. in his individual and trustee capacities, Ms. Wehba in her individual and trustee capacities, Bentley Forbes, and other corporations not parties to the present case were alter egos of each other and "were part of a single enterprise in relationship

to the two transactions for the purchase of property from Mitsuwa[.]" The *Mitsuwa* court noted that the parties disputed whether Ohio, Delaware, or California law should apply to the alter ego analysis, but the court found that the "result would be the same" regardless of which state's law applied.

{¶ 31} After this decision, the parties entered a stipulated judgment, and the judge entered a "judgment pursuant to stipulation for judgment."[2] Medical Mutual attached the judgment pursuant to the stipulation for judgment as an exhibit to its summary judgment motion with an affidavit stating the exhibit is a true and accurate copy. The judgment pursuant to the stipulated judgment, signed by the California trial court judge, states that the court "rules" that "[e]ach and every Defendant is the agent and alter ego of each and every other Defendant."

{¶ 32} The Wehba defendants filed a joint cross-motion for summary judgment and "response" to Medical Mutual's summary judgment motions. The Wehba defendants explained in their response that they did not oppose summary judgment in Medical Mutual's favor on its claim for breach of the guaranty against the GFW II Trust, Wehba Sr., Ms. Wehba (individually and as her capacity as trustee), and Bentley Forbes. But they argued that Wehba Jr. was not a guarantor and therefore could not be individually liable for breach of the guaranty. The Wehba

---

[2] The judgment pursuant to the stipulation for judgment states that the stipulation for judgment was "signed by the Defendants," which included Wehba Sr. individually, Ms. Wehba individually and as trustee of the GFW and GFW II Trusts, Wehba Jr. individually and as trustee of the GFW and GFW II Trusts, Bentley Forbes, and MMCO. Counsel for Mitsuwa and counsel for "All Defendants" signed the judgment pursuant to the stipulation for judgment "as to form," and the trial court judge also signed it.

defendants also stated that they did not oppose summary judgment against BFG Holdings for breach of the promissory note, but they maintained that the guarantors and Wehba Jr. individually could not be liable for breach of the promissory note. In their response to Medical Mutual's summary judgment motion, the Wehba defendants explained that they challenged only Medical Mutual's arguments related to fraud, unjust enrichment, and alter-ego liability.

{¶ 33} In their summary judgment motion, the Wehba defendants again argued that Wehba Jr. is not liable for breach of guaranty, only BFG Holdings is liable for breach of promissory note, and no defendants are liable for fraud, fraudulent concealment, fraudulent transfers, unjust enrichment, or set off. In support of their summary judgment motion, the Wehba's attached exhibits, including the September 2000 note and affidavits executed by Wehba Jr. and Ms. Wehba.

{¶ 34} The Wehba defendants also filed a motion for a protective order providing that they do not need to disclose tax returns that Medical Mutual requested in discovery.

{¶ 35} In July 2018, the trial court denied the Wehba defendants' motion for protective order and compelled them to produce the requested tax returns under seal. The Wehba defendants appealed, and the trial court stayed the proceedings. This court dismissed the appeal for lack of a final, appealable order, and the Ohio Supreme Court did not accept jurisdiction over the Wehba defendants' appeal of our dismissal.

{¶ 36} In December 2019, in a written opinion, the trial court granted both of Medical Mutual's motions for summary judgment and granted the Wehba defendants' summary judgment motion in part and denied it in part. The trial court found that all the Wehba defendants were alter egos of each other, and that Medical Mutual was entitled to summary judgment in its favor on its claims for breach of promissory note, breach of guaranty, and fraud and fraudulent concealment. The trial court found that the Wehba defendants were entitled to summary judgment in their favor on Medical Mutual's claim for fraudulent transfers. The trial court further found that Medical Mutual's claims for declaratory judgment, unjust enrichment, and setoff were moot.[3]

{¶ 37} The trial court ordered that Bentley Forbes, the GFW II Trust, Wehba Sr., Ms. Wehba "individually and as Co-Trustee of the GFW II Trust," and Wehba Jr. "as Co-Trustee of the GFW II Trust" were jointly and severally liable for "the principal sum of $4,351,679.00, plus interest at the [p]romissory [n]ote rate of 7.25% per annum from July 1, 2016 until the judgment is paid in full."

{¶ 38} The trial court also ordered that MMCO, BFG Holdings, Bentley Forbes, the GFW Trust, the GFW II Trust, Wehba Sr., Ms. Wehba individually and as trustee of the GFW II Trust, and Wehba Jr. as trustee of the GFW II Trust were jointly and severally liable for "the principal amount of $4,351,679.00, plus accrued interest in the amount of $516,031.63, plus interest at the [p]romissory [n]ote rate

---

[3] These claims related to the Medical Mutual's payment of rent during the receivership.

of 7.25% per annum from the date of January 16, 2018 to the present, and costs of this action."

{¶ 39} In January 2020, Medical Mutual filed a motion for a nunc pro tunc entry to clarify that the trial court's summary judgment order included Wehba Jr. in his individual capacity — not just in his capacity as a trustee for the GFW II Trust. Medical Mutual requested in the alternative that the trial court modify the order pursuant to Civ.R. 54(B) or grant Medical Mutual leave to file another summary judgment motion against Wehba Jr. in his individual capacity. The Wehba defendants filed an opposition. Before the trial court ruled on the motion, the Wehba defendants filed a notice of appeal from the trial court's summary judgment order. Medical Mutual filed a notice of its cross appeal, noting that its appeal was "contingent upon a finding that the [o]rder is final and appealable," which Medical Mutual disputed because the order did not dispose of the claims against Wehba Jr. in his individual capacity. This court remanded the matter to the trial court to "clarify" its judgment as to Wehba Jr.'s individual liability.

{¶ 40} The trial court's hearing on remand was delayed due to Covid-19, and the trial court held the hearing virtually in August 2020. At the hearing, counsel for Medical Mutual explained that they made a typographical error in their second motion for summary judgment when they failed to include Wehba Jr. in his individual capacity. Counsel for Wehba Jr. argued that Medical Mutual was making an "after-the-fact attempt" to "remedy" a strategic decision. The trial court denied Medical Mutual's motion for a nunc pro tunc order and modification pursuant to

Civ.R. 54(B), but the trial court granted Medical Mutual leave to file another summary judgment motion limited to the issue of Wehba Jr.'s individual liability. This court then dismissed the appeal for lack of a final, appealable order.

{¶ 41} Pursuant to the trial court's order, Medical Mutual filed a summary judgment motion regarding Wehba Jr.'s individual liability. Wehba Jr. filed an opposition and a cross-motion for summary judgment against Medical Mutual. Medical Mutual moved to strike the motion as untimely and redundant of the Wehba defendants' original summary judgment motion. Medical Mutual also filed an opposition to Wehba Jr.'s cross-motion for summary judgment, to which it attached excerpts from Wehba Jr.'s tax returns. The trial court granted Medical Mutual's motion to strike.

{¶ 42} In January 2021, the trial court granted Medical Mutual's summary judgment motion and held that Wehba Jr., in his individual capacity, was jointly and severally liable with the other Wehba defendants.

{¶ 43} It is from this judgment that the Wehba defendants timely appeal. The Wehba defendants' appeal is limited to the issues of Medical Mutual's fraud claim, piercing the corporate veil, and the individual liability of Wehba Jr.

## II. Standards of Review

{¶ 44} Except for the trial court's orders (1) granting Medical Mutual leave to file a third summary judgment motion regarding Wehba Jr.'s individual liability and (2) striking Wehba Jr.'s cross-motion for summary judgment regarding his individual liability, the Wehba defendants' assignments of error pertain to the trial

court's summary judgment orders. We review a trial court's judgment granting a motion for summary judgment de novo. *Citizens Bank, N.A. v. Richer*, 8th Dist. Cuyahoga No. 107744, 2019-Ohio-2740, ¶ 28. We independently "examine the evidence to determine if as a matter of law no genuine issues exist for trial." *Brewer v. Cleveland Bd. of Edn.*, 122 Ohio App.3d 378, 383, 701 N.E.2d 1023 (8th Dist.1997). We review the trial court's order without giving any deference to the trial court. *Citizens Bank* at ¶ 28. "On appeal, just as the trial court must do, we must consider all facts and inferences drawn in a light most favorable to the nonmoving party." *Glemaud v. MetroHealth Sys.*, 8th Dist. Cuyahoga No. 106148, 2018-Ohio-4024, ¶ 50.

{¶ 45} Pursuant to Civ.R. 56(C), summary judgment is proper where (1) "there is no genuine issue as to any material fact," (2) "the moving party is entitled to judgment as a matter of law," and (3) "reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made." *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978). Trial courts should award summary judgment only after resolving all doubts in favor of the nonmoving party and finding that "reasonable minds can reach only an adverse conclusion" against the nonmoving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-359, 604 N.E.2d 138 (1992).

{¶ 46} The moving party carries an initial burden of setting forth specific facts that demonstrate his or her entitlement to summary judgment. *Dresher v.*

*Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). If the movant fails to meet this burden, summary judgment is not appropriate. *Id.* at 293. If the movant does meet this burden, the burden shifts to the nonmovant to establish the existence of genuine issues of material fact. *Id.*

{¶ 47} Regarding the Wehba defendants' third and fourth assignments of error, we review for abuse of discretion the trial court's orders granting Medical Mutual leave to file a third summary judgment motion and striking Wehba Jr.'s cross-motion for summary judgment. *Sultaana v. Giant Eagle*, 8th Dist. Cuyahoga No. 90294, 2008-Ohio-3658, ¶ 5; *Marriott Corp. v. Lerew*, 8th Dist. Cuyahoga No. 85551, 2005-Ohio-5336, ¶ 39. An abuse of discretion connotes that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Ruwe v. Bd. of Twp. Trustees*, 29 Ohio St.3d 59, 61, 505 N.E.2d 957 (1987).

## III. Fraud

{¶ 48} In their first assignment of error, the Wehba defendants argue that the trial court erred in granting summary judgment in favor of Medical Mutual on Medical Mutual's fraud claim. They argue that (1) the fraud claim is based on the same underlying facts as the claim for breach of contract, (2) Medical Mutual did not produce evidence supporting each element of its fraud claim, and (3) the trial court improperly imposed an "adverse inference sanction" against them for failing to meaningfully participate in discovery.

{¶ 49} To succeed on its fraud claim, Medical Mutual must establish the following elements: (1) a representation of fact (or where there is a duty to disclose,

concealment of a fact); (2) that is material to the transaction at issue; (3) made falsely, with knowledge of its falsity or with utter disregard and recklessness as to whether it is true or false; (4) with the intent of misleading another into relying upon it; (5) justifiable reliance upon the misrepresentation (or concealment); and (6) resulting injury proximately caused by the reliance. *Cohen v. Lamko, Inc.*, 10 Ohio St.3d 167, 169, 462 N.E.2d 407 (1984).

{¶ 50} In support of its fraud claim, Medical Mutual points to the following allegations in its complaint:

> The Wehba Enterprise Defendants had a duty to disclose that the GFW II Trust no longer had $25 million in assets,[4] that they had drained the assets from the GFW Trust for their own personal benefit, and that they had voluntarily dissolved BFG Holdings even though it remained obligated to make the Note Payment.

> The Wehba Enterprise Defendants' representations regarding the GFW II Trust were false, as they had drained the assets from the GFW II Trust. Medical Mutual reasonably relied on the Wehba Enterprise Defendants' representations, and on their failure to disclose their fraudulent transfers to Medical Mutual, to its detriment by continuing to make the Rent Payment and by refraining from taking earlier action to enforce its rights.

Medical Mutual argues that its complaint was verified, and the Wehba defendants did not conduct any discovery to rebut these sworn allegations.

{¶ 51} The Wehba defendants argue that Medical Mutual produced no evidence to support its fraud claim and that the trial court improperly put the burden of proof on them to "disprove" the claim. However, sworn pleadings filed in

---

[4] We note that the guaranty agreement, attached to Medical Mutual's complaint, required the guarantors to maintain the GFW Trust's "net worth" at a minimum of $25 million.

the action are evidence for purposes of Civ.R. 56(C). *State ex rel. Spencer v. East Liverpool Planning Comm,* 80 Ohio St.3d 297, 298, 685 N.E.2d 1251, (1997); *see also* Civ.R. 56(C) (including "pleadings" in the list of materials appropriate for consideration on summary judgment). Medical Mutual properly relied on sworn allegations from its verified complaint in support of its summary judgment motion. The burden then shifted to the Wehba defendants to set forth evidence to counter those allegations. *See Dresher,* 75 Ohio St.3d at 292-293, 662 N.E.2d 264. Because the Wehba defendants failed to do so, Medical Mutual had no obligation to produce additional evidence. *See Spencer* at 298 (holding that because one party failed to set forth evidence countering the allegations in the verified complaint, the other party was not obligated to respond with additional evidence). The trial court did not err in shifting the burden to the Wehba defendants to establish the existence of genuine issues of material fact. The court's shifting the burden to the Wehba defendants under Civ.R. 56(C) did not constitute an "adverse inference sanction."

{¶ 52} The Wehba defendants also argue that the fraud claim fails because it is based on the same actions underlying the claims for breach of the guaranty and promissory note and because Medical Mutual does not seek damages for fraud beyond the damages it suffered for breach of contract. Medical Mutual maintains that the Wehba defendants' failure to disclose that they had depleted the net worth of the GFW II Trust "did not operate in a vacuum" and that the Wehba defendants also failed to disclose that BFG Holdings had been dissolved. Medical Mutual maintains that it suffered damages for fraud because it could not take steps to

"exercise[e] [its] guaranty rights against GFW II" or seek additional security for the note before the Wehba defendants "drained" the GFW II Trust and rendered it insolvent.

{¶ 53} "[T]he existence of a contract action excludes the opportunity to present the same case as a tort claim." *Stancik v. Deutsche Natl. Bank*, 8th Dist. Cuyahoga No. 102019, 2015-Ohio-2517, ¶ 40, citing *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 115 Ohio App.3d 137, 684 N.E.2d 1261 (9th Dist.1996). "'Where the causes of action in tort and contract are "factually intertwined," a plaintiff must show that the tort claims derive from the breach of duties that are independent of the contract and that would exist notwithstanding the contract.'" *Id.*, quoting *Cuthbert v. Trucklease Corp.*, 10th Dist. Franklin No. 03AP-662, 2004-Ohio-4417, ¶ 44. Furthermore, a plaintiff "must include actual damages attributable to the wrongful acts of the alleged tortfeasor which are *in addition* to those attributable to the breach of contract." (Emphasis sic) *Textron* at 151.

{¶ 54} Here, Medical Mutual has not alleged actual damages beyond the breach of guaranty. The claim for breach of guaranty is based only on the draining of the GFW II Trust. The fraud claim adds the dissolution of BFG Holdings and the concealment of these actions. However, the damages for both claims are the same. In its claim for breach of guaranty, Medical Mutual seeks damages "in the principal amount of $4,422,727.86, plus interest and penalties pursuant to the terms of the [p]romissory [n]ote." Likewise, in its fraud claim, Medical Mutual seeks damages "in the principal amount of $4,422,727.86, plus interest and penalties pursuant to

the terms of the [p]romissory [n]ote."[5]  Beyond this pleading, Medical Mutual did not present any other evidence of actual damages for fraud that are in addition to the damages it claimed for breach of the guaranty.

{¶ 55} Accordingly, even if the allegations in the verified complaint satisfied the elements for fraud, the trial court erred in granting summary judgment in favor of Medical Mutual on the fraud claim.  The Wehba defendants are entitled to judgment as a matter of law in their favor on Medical Mutual's fraud claim.

{¶ 56} We therefore sustain the Wehba defendants' first assignment of error.

## IV.  Piercing the Corporate Veil

{¶ 57} In their second assignment of error, the Wehba defendants argue that the trial court erred when it pierced the corporate veil to impose liability on all the Wehba defendants as alter egos of each other.  They maintain that Medical Mutual and the trial court treated them as "one undifferentiated group," did not identify the conduct of any specific party, and did not cite evidence as to how any of the Wehba defendants were related to each other.  They further contend that the trial court improperly (1) applied a judgment from the California litigation, (2) imposed another adverse inference sanction for their lack of participation in discovery, and (3) ignored the second and third prongs of the "*Belvedere/Dombrowski* test."

{¶ 58} It is a well-settled principle in Ohio law that shareholders, officers, and directors of a corporation are generally not liable for the debts of the

---

[5] In its complaint, Medical Mutual sought attorney fees and punitive damages for fraud, but these are not "actual" damages in this context.  *See Cord v. Victory Sols., L.L.C.*, 8th Dist. Cuyahoga No. 106006, 2018-Ohio-590, ¶ 19.

corporation. *Dombroski v. WellPoint, Inc.*, 119 Ohio St.3d 506, 2008-Ohio-4827, 895 N.E.2d 538, ¶ 16 citing Section 3, Article XIII, Ohio Constitution; *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos.*, 67 Ohio St.3d 274, 287, 617 N.E.2d 1075 (1963). Shareholders, however, do not hold absolute immunity from liability for the actions of their corporations. *Id.* at ¶ 17. The legal fiction of the corporate form cannot stand if used for a purpose or intent not within its reason and policy. *Id.*, citing *State ex rel. Atty. Gen. v. Std. Oil Co.*, 49 Ohio St. 137, 30 N.E. 279, paragraph one of the syllabus. When a shareholder misuses the corporate form as a shield from liability for their own misdeeds, Ohio law will permit piercing of the corporate veil as a rare exception to the guiding principles of limited shareholder liability. *Id.* at ¶ 17, 26, citing *Belvedere* at 287; *Dole Food Co. v. Patrickson*, 538 U.S. 468, 475, 123 S.Ct. 1655, 155 L.E.2d 643 (2003). Piercing the corporate veil is a judicial act that imposes personal liability on otherwise immune corporate officers, directors, or shareholders for the corporation's wrongful acts. *Denny v. Breawick, L.L.C.*, 2019-Ohio-2066, 137 N.E.3d 578, ¶ 15 (3d Dist.), citing *Minno v. Pro-Fab, Inc.*, 121 Ohio St.3d 464, 2009-Ohio-1247, 905 N.E.2d 613, ¶ 8.

{¶ 59} The Ohio Supreme Court has established a three-prong test to determine whether to pierce the corporate veil:

> (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act [or a similarly unlawful act] against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong.

*Belvedere* at paragraph three of the syllabus, as modified by *Dombroski* at ¶ 29 (modification is indicated by the bracketed language above).

{¶ 60} "The first prong of the *Belvedere* test is basically the 'alter ego doctrine.'" *Byars v. Herman*, 8th Dist. Cuyahoga No. 83496, 2004-Ohio-3613, ¶ 24, citing *Belvedere*. When determining whether an "individual and corporation are indistinguishable" for purposes of the first prong, courts may consider factors including, "(1) whether corporate formalities were observed; (2) whether corporate records were kept; (3) whether corporate funds were commingled with personal funds; and (4) whether corporate property was used for a personal purpose." *Id.*

{¶ 61} Medical Mutual argues that the trial court did not need to conduct an analysis of the three elements from *Belvedere,* 67 Ohio St.3d 274, 617 N.E.2d 1075, because the California court in the Mitsuwa litigation already entered a judgment that Wehba Sr. individually, Ms. Wehba individually and as trustee of the GFW and GFW II Trusts, Wehba Jr. individually and as trustee of the GFW and GFW II Trusts, Bentley Forbes, and MMCO (among other parties not named in the present case) are alter egos of each other. Medical Mutual maintains that this judgment is binding on this court, or, alternatively, that the judgment is at least evidence to show that the Wehba defendants are alter egos of each other. Indeed, the trial court relied on the California judgment to find that the Wehba defendants are alter egos of each other and to hold all the Wehba defendants jointly and severally liable to Medical Mutual.

**{¶ 62}** However, if the judgment is binding on us, it would satisfy Medical Mutual's burden of proof only for the first of the three prongs of the *Belvedere* test. Evidence that a corporation and an individual are alter egos of each other alone is insufficient to pierce the corporate veil; "all three prongs of the *Belvedere* test must be met for the court to pierce the corporate veil." *My Father's House #1, Inc. v. McCardle,* 2013-Ohio-420, 986 N.E.2d 1081, ¶ 29 (3d Dist.) (finding that the trial court erred in piercing the corporate veil based on the alter ego doctrine alone without "any evidence regarding the remaining two prongs of the *Belvedere* test").

**{¶ 63}** The trial court's opinion does not mention the *Belvedere* test or include analysis of the second and third prongs. Instead, the trial court states that "alter ego is a separate remedy under Ohio law" and cites to *Slone v. Lorenz (In re Lorenz)*, S.D.Ohio No. 09-31913, 2011 Bankr. LEXIS 738 (Mar. 8, 2011). *Slone* involved the issue of reverse veil piercing, and the bankruptcy court for the Southern District of Ohio cited other federal cases for the principle that in Ohio, "alter ego is a distinct remedy." *Id.* at 23. Medical Mutual also cites to *Brennan v. Slone (In re Fisher)*, 296 Fed. Appx. 494, 506 (6th Cir.2008), another case involving reverse veil piercing, for this principle. However, Ohio state courts have not adopted this principle, and one state court case acknowledging this federal line of cases has explicitly criticized it: "if a corporate form could be disregarded for purposes of imposing personal liability vis-a-vis the alter-ego doctrine alone, then this would seem to circumvent and, indeed, eviscerate the other two requirements for piercing

a corporate veil." *Fifth Third Bank v. Diversified Transp. Servs.*, C.P. Lucas No. CI 09-2373, 2010 Ohio Misc. LEXIS 547, 30 (Jan. 14, 2010), fn. 18.

{¶ 64} Accordingly, we conduct our de novo review under all three prongs of the *Belvedere* test.

## A. *Belvedere* Test Prong One: Alter Ego

{¶ 65} In support of the first prong of the *Belvedere* test (whether the Wehba defendants are alter egos of each other), Medical Mutual points to the judgment pursuant to the stipulated judgment in the California proceeding. The Wehba defendants argue that we cannot consider the California judgment at all and, even if we can, it is not binding on this court.

{¶ 66} First, we may consider the California judgment because the judgment is properly within the record in this case. *See Huber Heights Veterans Club, Inc. v. Grand Voiture D'Ohio La Societe Des 40 Hommes Et 8 Chevaux*, 2d Dist. Montgomery No. 29078, 2021-Ohio-2695, ¶ 34 ("The documents from other proceedings were properly before the trial court as exhibits in support of the supplemental motions for summary judgment, and the trial court did not err in considering them."). Medical Mutual's counsel executed an affidavit in support of Medical Mutual's June 2018 summary judgment motion. He averred that "[a] true and accurate copy of the Judgment Pursuant to Stipulation for Judgment in *Mitsuwa Corporation v. C. Frederick Wehba, et al.*, LASC No. BC 463929 ("Stipulated Judgment") is attached as Exhibit A to Medical Mutual of Ohio's Motion for Summary [Judgment] Against the Wehba Enterprise Defendants for

Breach of Promissory Note, Fraud and Fraudulent Concealment, and Unjust Enrichment."

{¶ 67} The judgment pursuant to the stipulated judgment, dated October 14, 2016, states the following in relevant part:

1. On June 22, 2011, Mitsuwa filed a Complaint against certain of the Wehba Defendants, and thereby commenced *Mitsuwa Corporation v. C. Frederick Wehba, et al,* Superior Court for the State of California, County of Los Angeles, Case No. BC 463929 (the "Action"), in which it alleged various contract and tort claims, including fraud, conversion, and fraudulent transfers, and made certain allegations against the Wehba Defendants.

2. Throughout the course of the litigation, certain additional Wehba Defendants were added as Defendants by Mitsuwa.

3. Trial of the Action commenced on May 22, 2015, the first day of the Phase 1 trial on the alter ego issues.

4. On April 22, 2015, the Court issued a "Tentative Statement of Decision" (which became final by virtue of Cal. Code of Civil Proc. § 632) finding the Wehba Defendants alter egos of each other.

5. On June 26, 2015, the Court granted Mitsuwa's motion for judgment on the pleadings on the First and Second Causes of Action in the Complaint against the Wehba Defendants in the amount of $7,901, 291.18, as of June 26, 2015, with interest accruing at 10% thereafter.

6. On November 6, 2015, the parties filed a Stipulation of Conditional Dismissal and to stay the Action until December 16, 2016, which the Court granted.

7. On October 14, 2016, Mitsuwa filed an *ex parte* application requesting Judgment against Defendants pursuant to a Stipulation for Judgment signed by the Defendants.

8. Mitsuwa suffered damages in the amount of Fifteen Million Dollars ($15,000,000).

9. Each and every Defendant is the agent and alter ego of each and every other Defendant.

Based on these findings,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

* * *

3. All the Wehba Defendants, as set forth in Exhibit A hereto, are jointly and severally liable to Plaintiff Mitsuwa for $11,087,397.20.

{¶ 68} Exhibit A to the stipulated judgment lists 15 defendants, including Wehba Sr. individually, Ms. Wehba individually and as trustee of the GFW and GFW II Trusts, Wehba Jr. individually and as trustee of the GFW and GFW II Trusts, Bentley Forbes, and MMCO. Exhibit A includes as defendants "Bentley Forbes Holdings, LLC" and "BF Holdings 2005, LLC," but these appear to be different entities from "BFG Holdings 2000, LLC," which executed the note for the Rose Building and has since been dissolved.

{¶ 69} The parties dispute whether the alter-ego findings in the judgment pursuant to the stipulated judgment are binding on this court. The parties agree that California law regarding collateral estoppel, also known as issue preclusion, guides this analysis. *See Holzemer v. Urbanksi,* 86 Ohio St.3d 129, 132, 712 N.E.2d 713 (1999) (explaining that the full faith and credit clause of the U.S. Constitution requires Ohio to give another state's court proceedings the same "credit" as that proceeding would carry in the state's own courts); *In re S.K.L.*, 2016-Ohio-2826, 64 N.E.3d 413, ¶ 23, fn. 2 (8th Dist.), citing *Holzemer* ("full faith and credit only requires courts to enforce judgments as the other court would enforce").

{¶ 70} Under California law, issue preclusion "prevents 'relitigation of previously decided issues,' rather than causes of action as a whole." *Samara v.*

*Matar*, 5 Cal.5th 322, 327, 419 P.3d 924, 234 Cal.Rptr.3d 446 (2018), quoting *DKN Holdings L.L.C. v. Faerber*, 61 Cal.3th 813, 824, 352 P.3d 378, 189 Cal.Rptr.3d 809 (2015). "[I]ssue preclusion applies (1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party." *DKN Holdings* at 825.[6]

{¶ 71} As to the first and third elements, the California court held a trial "on the alter ego issues" on May 22, 2015, and the following month found that many of the Wehba defendants in that action were alter egos of each other. This decision "became final by virtue of Cal. Code of Civil Proc. § 632." The parties then reached a settlement and submitted to the court a stipulation of judgment. Pursuant to the stipulation for judgment, the judgment specifically found that each of the defendants listed in the attached exhibit (including Wehba Sr. individually, Ms. Wehba individually and as trustee of the GFW and GFW II Trusts, Wehba Jr. individually and as trustee of the GFW and GFW II Trusts, Bentley Forbes, and MMCO) is "the agent and alter ego of each and every other [d]efendant." Accordingly, the alter-ego issue was actually and necessarily decided and was subject to a final adjudication.

---

[6] Ohio law regarding issue preclusion is substantively the same as California's. *See Thompson v. Wing,* 70 Ohio St.3d 176, 183, 637 N.E.2d 917 (1994) ("Collateral estoppel applies when the fact or issue (1) was actually and directly litigated in the prior action, (2) was passed upon and determined by a court of competent jurisdiction, and (3) when the party against whom collateral estoppel is asserted was a party in privity with a party to the prior action.").

{¶ 72} Regarding the second element, the Wehba defendants argue that the California proceeding was related to two completely different properties than the Rose Building, so the issue in the judgment pursuant to the stipulated judgment is not the same as the issue in the present case. We disagree. The specific properties at issue do not impact the alter-ego analysis. Instead, the relevant issues include whether the Wehba defendants observed corporate formalities, kept corporate records, comingled corporate funds with personal funds, or used corporate property for a personal purpose. These issues are the same in the California case and the present case. Furthermore, the Wehba defendants who were parties in the California case stipulated that they were alter egos of each other in October 2016, the same year that BFG Holdings breached the note and the Wehba guarantors breached the guaranty agreement with Medical Mutual.

{¶ 73} Lastly, Medical Mutual is asserting the alter-ego issue against parties who were parties in the California case or in privity with those parties. Wehba Sr., Ms. Wehba individually and as a trustee of GFW II Trust, Wehba Jr. individually and as trustee of GFW II Trust, Bentley Forbes, and MMCO were defendants in the California case. Although BFG Holdings, the GFW Trust, and GFW II Trusts were not parties in the California case, they are owned by and in privity with the other Wehba defendants.

{¶ 74} The Wehba defendants argue that issue preclusion does not apply because the judgment was a "consent judgment," and in California, consent judgments are "not usually given preclusive effect in subsequent litigation on a

different cause of action, unless the parties manifest an intent in the consent judgment to give it such preclusive effect." *Landeros v. Pankey*, 39 Cal.App.4th 1167, 1172 (1995). However, the facts of the cases on which the Wehba defendants rely for this principle do not support their argument. In *Landeros*, the appellate court found that collateral estoppel did not apply to bar an issue that was not expressly within the stipulated judgment and where the stipulated judgment contained "no language of comprehensive settlement." *Id.* at 1172, 1174. In *Tennison v. California Victim Comp. & Govt. Claims Bd.*, 152 Cal.App.4th 1164, 1176 (2007), the appellate court found that an administrative body was not bound to find that a former criminal defendant was "factually innocent" despite an order that he had been released from prison after a federal court granted his habeas petition. In *Cal. State Auto. Assn. Inter-Ins. Bur. v. Superior Court*, 50 Cal.3d 658, 664 (1990), fn. 2, the California Supreme Court found that "by specifically stipulating to the issue of liability, the parties intended the ensuing judgment to collaterally estop further litigation on that issue."

{¶ 75} Unlike the judgments in *Landeros* and *Tennison*, and like the judgment in *Cal. State Auto. Ins. Co.*, Medical Mutual seeks to apply collateral estoppel to an issue to which the parties specifically stipulated. The judgment pursuant to the stipulated judgment specifically included the stipulation that "[e]ach and every [d]efendant is the agent and alter ego of each and every other [d]efendant." This specific language shows that the parties intended to be bound on this issue. *See People v. Felix*, 1169 Cal.App.4th 607, 615, 87 Cal.Rptr.3d 482 ("A

stipulated judgment may properly be given collateral estoppel effect if the parties manifest an intent to be collaterally bound by the judgment, as by stipulating to a specific factual finding."); *Cal. State Auto. Assn. Inter-Ins. Bur.* at 664, fn. 2 (if the parties did not intend to "collaterally estop further litigation on that issue," they "easily could have expressly restricted the scope of the agreement"). The Wehba defendants maintain that they did not intend to be bound by the alter ego finding because they did not admit to liability in the settlement agreement and because the settlement agreement does not provide for third-party beneficiaries. However, a general denial of liability to Mitsuwa is separate from the issue of whether the parties are alter egos of each other. And Medical Mutual is not seeking to be a third-party beneficiary to the settlement agreement between Mitsuwa and the Wehba defendants.

{¶ 76} Accordingly, we find that issue preclusion applies to the judgment pursuant to the stipulated judgment, and we are bound by the judgment's finding that the Wehba defendants are alter egos of each other. Medical Mutual satisfied its burden under the first prong of the *Belvedere* test.

### B. *Belvedere* Test Prongs Two and Three: Control Exercised to Commit an Unlawful Act Resulting in Injury

{¶ 77} The Wehba defendants argue that Medical Mutual did not present evidence to satisfy the second and third prongs of the *Belvedere* test, that the Wehba defendants exercised control over the entities (namely, BFG Holdings and Bentley Forbes) in such a manner as to commit fraud, an illegal act, or a similarly unlawful act against Medical Mutual, causing Medical Mutual injury or unjust loss. The

Wehba defendants maintain that the trial court did not analyze the second and third prongs, and that breach of contract is insufficient to satisfy the requirement of an "unlawful act."

{¶ 78} The Wehba defendants argue that the trial court's failure to acknowledge the second and third prongs of the *Belvedere* test "itself warrants reversal," citing to *RCO Intl. Corp. v. Clevenger*, 180 Ohio App.3d 211, 2008-Ohio-6823, 904 N.E.2d 941 (10th Dist.). However, in *Clevenger*, although the trial court did not address two of the *Belvedere* prongs, the Tenth District considered this "in light of the fact that" the defendant did not file an appellate brief or oppose the facts that the plaintiff presented on appeal. *Id.* at 215. This case does not stand for the principle that a trial court's silence regarding part of the *Belvedere* analysis automatically requires reversal. As our review is de novo, we analyze the second and third prongs of the *Belvedere* test even though the trial court did not.

{¶ 79} We agree with the Wehba defendants that breach of contract alone is insufficient to satisfy the second prong of the *Belvedere* test. "A simple breach of contract, in the absence of a more substantial factual predicate indicative of some corporate malfeasance, with direct bearing on the plaintiff's injury, is insufficient to meet the second prong of the *Belvedere* test." *Connolly v. Malkamaki*, 11th Dist. Lake No. 2001-L-124, 2002-Ohio-6933, ¶ 34.

{¶ 80} However, Medical Mutual has established unlawful conduct beyond mere breach of contract. A judgment on a fraud claim is unnecessary to satisfy the second prong of the *Belvedere* test. *See Longo Construction, Inc. v. ASAP Tech.*

*Servs.*, 140 Ohio App.3d 665, 672, 748 N.E.2d 1164 (8th Dist.2000) (explaining that a finding of fraudulent conduct to satisfy the second *Belvedere* factor is decided separately from an independent claim for fraud); *Clevenger* at ¶ 215 (plaintiff "was not required to plead fraud in order to seek piercing the corporate veil"). Medical Mutual alleged in its verified complaint that the Wehba defendants concealed from Medical Mutual that they dissolved BFG Holdings and defunded the GFW II Trust. Given this concealment, along with the findings in the California litigation, reasonable minds can reach only an adverse conclusion against the Wehba defendants that the Wehba individuals controlled the Wehba entities in such a way as to commit fraud, an illegal act, or a similarly unlawful act that caused harm to Medical Mutual.

{¶ 81} The Wehba defendants have not produced evidence to the contrary to create a genuine issue of material fact. They point to Wehba Jr.'s affidavit in support of his September 2020 opposition to Medical Mutual's summary judgment motion on his individual liability, in which Wehba Jr. averred the following: Ms. Wehba, not Wehba Jr., operated and made the "business and strategic decisions for GRW/GFWII"; Wehba Jr. resigned as manager of BFG Holdings and the GFW II Trust in 2012; after January 2012, Wehba Sr. managed BFG Holdings, and Wehba Jr. held a minority interest in BFG Holdings but had "no involvement in running or operating" it; and after October 2012, Wehba Jr. was one of four beneficiaries of the GFW II Trust but had "no involvement in running or operating" it.

{¶ 82} Medical Mutual argues that Wehba's affidavit contradicts a document that Medical Mutual obtained in a separate lawsuit. Medical Mutual points to a document that states that Wehba Sr. said that the Wehba defendants "went ahead and put [Wehba Jr.] back as manager" in 2015. The Wehba defendants maintain that the document obtained in another lawsuit is improper evidence for us to consider.

{¶ 83} Regardless, the extent of Wehba Jr.'s involvement in the GFW II Trust and BFG Holdings pertains to the first *Belvedere* prong: whether Wehba Jr. controlled the Wehba corporations so completely that the corporations had no separate mind, will, or existence of their own. As previously discussed, the judgment pursuant to the stipulated judgment in the California case, finding that Wehba Jr. is an alter ego of the other Wehba defendants, is binding on this court. Thus, Wehba Jr.'s affidavit and the document Medical Mutual obtained in another lawsuit do not create a dispute of fact that is material here.

{¶ 84} Accordingly, we find that the trial court did not err in piercing the corporate veil and holding the Wehba defendants jointly and severally liable for breach of the note and guaranty. We overrule the Wehba defendants' second assignment of error.

## V. Wehba Jr.'s Individual Liability

{¶ 85} In their third assignment of error, appellants argue that the trial court erred in allowing Medical Mutual to file a motion for summary judgment against Wehba Jr. in his individual capacity and erred in finding Wehba Jr. individually

liable. In their fourth assignment of error, appellants contend that the trial court erred in striking Wehba Jr.'s cross-motion for summary judgment on the issue of his individual liability. Appellants assert their arguments for these assignments of error together, and we will address the third and fourth assignments of error together for ease of discussion.

{¶ 86} The Wehba defendants first argue that the trial court erred in granting Medical Mutual leave to file a summary judgment motion against Wehba Jr. individually because the record does not support Medical Mutual's argument that it was a "typographical error" to omit reference to Wehba Jr's individual liability in its other summary judgment motions. The Wehba defendants maintain that Medical Mutual could not have committed a "cut and paste" error when it copied the defendants from its January 2018 summary judgment motion into its list of defendants in its June 2018 summary judgment motion because Medical Mutual also added MMCO and BFG Holdings into the June 2018 motion. The Wehba defendants further argue that counsel for Medical Mutual represented in a status conference that a ruling on its January and June 2018 summary judgment motions would resolve all of Medical Mutual's claims.

{¶ 87} "[A] trial court has the inherent power to control its own docket and the progress of proceedings in its court." *Chou v. Chou*, 8th Dist. Cuyahoga No. 80611, 2002-Ohio-5335, ¶ 38. As previously discussed, we review the trial court's "docketing decision[s]" and decisions to grant leave to file a summary judgment motion for abuse of discretion. *Id.*; *Sultaana*, 8th Dist. Cuyahoga No. 90294, 2008-

Ohio-3658, at ¶ 5. An abuse of discretion connotes that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Ruwe*, 29 Ohio St.3d at 61, 505 N.E.2d 957.

{¶ 88} We find that the trial court's decision to grant Medical Mutual leave to file another summary judgment motion addressing Wehba Jr.'s individual liability was not "unreasonable, arbitrary, or unconscionable." Medical Mutual named as a defendant in its third-party complaint Wehba Jr. in both his individual and trustee capacities. Neither the January nor June 2018 summary judgment motions included Wehba Jr. in his individual capacity, and the issue if Wehba Jr.'s individual liability therefore remained pending after the trial court ruled on the January and June 2018 summary judgment motions. Accordingly, we find that the trial court did not abuse its discretion in granting Medical Mutual leave to file a summary judgment motion addressing Wehba Jr.'s individual liability.

{¶ 89} Next, the Wehba defendants argue that the trial court erred in granting Medical Mutual's summary judgment motion against Wehba Jr. individually. They maintain that Wehba Jr. had no "managerial role" over BFG Holdings or GFW II during the relevant time period. As discussed above, we find that the trial court did not err in piercing the corporate veil to hold Wehba Jr. individually liable for Medical Mutual's judgment. But, as previously discussed, we find that the trial court erred in holding Wehba Jr. (and the other Wehba defendants) liable for fraud.

{¶ 90} Accordingly, we sustain the Wehba defendants' third assignment of error as it pertains to the trial court's holding Wehba Jr. liable for fraud, but we otherwise overrule the third assignment of error.

{¶ 91} Lastly, the Wehba defendants argue that the trial court abused its discretion in striking Wehba Jr.'s September 2020 cross-motion for summary judgment on the issue of his individual liability. The Wehba defendants maintain that because the trial court gave Medical Mutual leave to file an additional summary judgment motion regarding Wehba Jr.'s individual liability, "Wehba Jr. should have been permitted to do the same." As previously discussed, we review a trial court's decision on a motion to strike for abuse of discretion. *Marriott Corp.*, 8th Dist. Cuyahoga No. 85551, 2005-Ohio-5336, at ¶ 39. In January 2020, Medical Mutual sought (along with alternative remedies) leave to file another summary judgment motion for its apparent mistake of not including Wehba Jr.'s individual liability in its previous motions. The trial court granted Medical Mutual leave. However, Wehba Jr. filed his September 2020 cross-motion for summary judgment without leave and did not request leave until after Medical Mutual moved to strike his motion. The Wehba defendants also already argued in their June 2018 summary judgment motion that "Wehba II is not liable for breach of guaranty" and only BFG Holdings 2000 is liable for breach of the note.

{¶ 92} Accordingly, we find that the trial court did not abuse its discretion in striking Wehba Jr.'s September 2020 summary judgment motion, and we overrule the Wehba defendants' fourth and final assignment of error.

**{¶ 93}** Judgment is affirmed in part and reversed in part consistent with this opinion. We reverse in part the trial court's December 2019 and January 2021 orders granting summary judgment to Medical Mutual as those orders pertain to Medical Mutual's fraud claim. We remand with instructions for the trial court to enter judgment in favor of the Wehba defendants (including Wehba Jr. in his individual capacity) on Medical Mutual's fraud claim. We otherwise affirm the trial court's judgments.

It is ordered that the appellants and the appellee split the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY J. BOYLE, ADMINISTRATIVE JUDGE

EILEEN A. GALLAGHER, J., and
EMANUELLA D. GROVES, J., CONCUR