[Cite as *NZR Retail of Toledo, Inc. v. Beck Suppliers, Inc.*, 2016-Ohio-3205.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

NZR Retail of Toledo, Inc., et al.                           Court of Appeals No. L-15-1179

      Appellants                                        Trial Court No. CI0201403602

v.

Beck Suppliers, Inc., et al.                                 **DECISION AND JUDGMENT**

      Appellees                                         Decided:  May 27, 2016

* * * * *

Alan Kirshner, for appellants.

Matthew D. Harper and Jared J. Lefevre, for appellees.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} This is an appeal from the judgment of the Lucas County Court of Common

Pleas, granting appellees', Beck Suppliers, Inc. ("Beck Suppliers") and Dean Beck,[1]

Civ.R. 12(B)(6) motion to dismiss appellants', NZR Retail of Toledo, Inc. ("NZR"),

---

[1] Dean Beck is one of the chief officers of Beck Suppliers.

MAR Distributors of Toledo, Inc. ("MAR Distributors"), Naqid Hasan, Yazeed Qaimari, and Mona Qaimari, complaint. For the reasons that follow, we affirm, in part, and reverse, in part.

**Background Facts**

{¶ 2} Beck Suppliers is in the business of supplying automobile gasoline to area gas stations, including those owned by NZR. According to the complaint, NZR is "affiliated" with the other appellants, MAR Distributors, Naqid Hasan, Yazeed Qaimari, and Mona Qaimari.

{¶ 3} The following background facts are taken from our decision in *Beck v. MAR Distribs. of Toledo, Inc.*, 6th Dist. Lucas No. L-11-1219, 2012-Ohio-5321. In 2002, MAR Distributors, Hasan, and Yazeed and Mona Qaimari (the "borrowers") borrowed approximately $264,000 from the trust of Dean Beck's father, William Beck (the "Beck Trust").[2] They did not fully repay the loan. On August 13, 2009, the Beck Trust filed a complaint against the borrowers for breach of contract.

{¶ 4} The matter proceeded to trial. Dean Beck was called as a witness, and a subpoena duces tecum was issued for him to bring along records showing the number of gallons of gasoline sold by Beck Suppliers to NZR, as well as the prices used in those sales. The borrowers were pursuing a theory of credits or setoffs, alleging that Beck Suppliers increased the price of the gasoline by two cents per gallon after the dispute over the nonpayment of the loan arose. Notably, the borrowers did not assert the affirmative

_____

[2] The William F. Beck Living Trust, of which William Beck is the trustee.

2.

defense of setoff, nor did they file a third-party complaint against Beck Suppliers. When Dean Beck did not bring the requested documents, the borrowers moved for a continuance, which the trial court denied. The court ultimately granted judgment in favor of the Beck Trust.

{¶ 5} On appeal, we affirmed. We held that the subpoenaed evidence was not relevant to the breach of contract claim because the borrowers were not entitled to a setoff. A setoff is defined as "that right which exists between two parties, each of whom under an independent contract owes a definite amount to the other, to set off their respective debts by way of a mutual deduction." *Id.* at ¶ 12, quoting *Witham v. South Side Bldg. & Loan Assn. of Lima, Ohio*, 133 Ohio St. 560, 562, 15 N.E.2d 149 (1938). We reasoned that there was no evidence to contradict the fact that the Beck Trust and Beck Suppliers were two different legal entities, and that the Beck Trust was not a party to the gasoline supply contracts. Thus, we concluded that there was no mutuality between the parties to the respective contracts. Accordingly, we held that the trial court did not abuse its discretion in denying the borrowers' motion for a continuance to permit them to secure the subpoenaed evidence.

{¶ 6} Subsequently, on August 12, 2014, appellants filed a two-count complaint against appellees, Beck Suppliers, Inc. and Dean Beck. In the second count of the complaint, appellants alleged that as of September 1, 2010, MAR Distributors, Hasan, and Yazeed and Mona Qaimari, owed William Beck $143,255.08. Further, they alleged that Dean Beck proposed that NZR pay Beck Suppliers an extra two cents per gallon, of

3.

which one cent would fund a security deposit, and the other cent would be paid to the Beck Trust toward the outstanding debt. NZR accepted the proposal, and the extra two cents were paid through January 2012, totaling $136,000. Appellants alleged, however, that Beck Suppliers failed to pay the $68,000 it had collected from NZR to the Beck Trust and failed to return the other $68,000 it collected as a security deposit. Appellants additionally alleged that Dean Beck's representations regarding the additional two-cent proposal were knowingly false and made with the intent of misleading NZR into relying on them.

{¶ 7} In the first count of the complaint, which is related to the contract between NZR and Beck Suppliers, but unrelated to the dispute over the outstanding debt, appellants alleged that Beck Suppliers wrongfully invoiced and collected $637,000 from NZR for Beck Suppliers' Commercial Activity Tax ("CAT") liability.

{¶ 8} On October 20, 2014, appellees moved for dismissal pursuant to Civ.R. 12(B)(6) and/or partial summary judgment on appellants' claims. Appellees argued that the second count was barred by (1) the statute of frauds, (2) Ohio's bar against turning an alleged contract claim into a tort claim, and (3) res judicata. As to the first count, appellees argued that it failed to state a claim upon which relief could be granted because the CAT statute, R.C. 5751.02(B), expressly permits recovery of costs attributable to the CAT, and even if it did not, only the tax commissioner has standing to enforce the statute.

{¶ 9} On May 29, 2015, the trial court entered its judgment, granting appellees' Civ.R. 12(B)(6) motion to dismiss both Counts 1 and 2. Regarding the second count, the

4.

trial court repeatedly characterized the agreement to pay the additional two cents as an *oral* agreement. The court also characterized the arrangement as a "suretyship on two levels": (1) NZR agreed to pay the debt for MAR Distributors, and (2) Beck Suppliers promised to assist in answering for the debt by making payments to the Beck Trust. The court concluded that because the agreement was an oral agreement of suretyship, the statute of frauds applied to bar the claim. Further, the court rejected appellants' attempt to re-characterize the claim as sounding in tort to avoid the statute of frauds, finding that there were no separately alleged damages apart from those stemming from the breach of contract. Regarding appellees' res judicata arguments, however, the court found that the parties to the litigation were different, and thus summary judgment on the grounds of res judicata was inappropriate.

{¶ 10} As to the first count, the court held that dismissal for failure to state a claim was appropriate because the law allowed Beck Suppliers to include the amount of the CAT in the purchase price.

{¶ 11} Appellants have timely appealed the trial court's judgment, asserting two assignments of error for our review:

>  1. The Trial Court Incorrectly Accepted Beck's Interpretation of Section 5751.02 and Erred in Dismissing Count 1 of Plaintiff's Complaint.

>  2. The trial court erred in dismissing plaintiffs' second count because the second count does state a claim.

We will address appellants' assignments of error in reverse order.

5.

**Analysis**

{¶ 12} We review an order granting a Civ.R. 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted de novo. *Perrysburg Twp. v. Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, 814 N.E.2d 44, ¶ 5. A Civ.R. 12(B)(6) motion to dismiss is procedural and tests the sufficiency of the complaint. *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.*, 65 Ohio St.3d 545, 548, 605 N.E.2d 378 (1992). "In determining whether a complaint states a claim upon which relief can be granted, all factual allegations of the complaint must be presumed to be true and all reasonable inferences must be made in favor of the nonmoving party." *State ex rel. Edwards v. Toledo City School Dist. Bd. of Edn.*, 72 Ohio St.3d 106, 108, 647 N.E.2d 799 (1995). In order for a court to grant a motion to dismiss for failure to state a claim, it must appear "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242, 245, 327 N.E.2d 753 (1975).

{¶ 13} In support of their second assignment of error, appellants initially contend that the claim does not trigger the statute of frauds as the situation is not a suretyship. To that end, appellants note that neither NZR nor Beck Suppliers promised the Beck Trust, the obligee, that it would pay the debt of MAR Distributors, Hasan, and Yazeed and Mona Qaimari. Appellees, in response, contend that the agreement is an *oral* agreement to answer for the debt of another, with Beck Suppliers acting as an agent for the Beck Trust. Thus, appellees conclude that the agreement is subject to the statute of frauds.

6.

**{¶ 14}** Regardless of whether or not the transaction could be construed as a suretyship, we agree with appellees that it is subject to the statute of frauds because, at the least, the contract between NZR and Beck Suppliers is for the sale of goods in excess of $500. *See* R.C. 1302.04(A). Notwithstanding that, we conclude that the trial court erred in dismissing the second count on the basis of the statute of frauds.

**{¶ 15}** Here, although the trial court found to the contrary, the complaint itself does not allege an *oral* agreement. Instead, it only uses the term "agreement." Because we must make all reasonable inferences in favor of the nonmoving party, we must infer that appellants alleged a written agreement such that dismissal on the basis of the statute of frauds is not appropriate.

**{¶ 16}** In addition, we note that attached to appellees' motion to dismiss were several signed contracts between Beck Suppliers and NZR. One of those, dated August 1, 2010, included the handwritten notation, initialed by "DB," that ".01 will be added to delivered price and rebated back to purchaser," and ".01 will be added to delivered price and held by Beck for a deposit." Thus, even if the motion to dismiss is converted to a motion for summary judgment to include outside evidence, the record contains a signed writing evidencing the agreement such that judgment in favor of appellees still would not be warranted on the basis of non-compliance with the statute of frauds.

**{¶ 17}** Furthermore, we find that dismissal pursuant to Civ.R. 12(B)(6) is not appropriate as to Beck Suppliers because the complaint contains allegations that state a

7.

cause of action. Notably, our analysis is made difficult partly because the complaint was drafted in such a manner that it is difficult to ascertain what legal theory appellants are pursuing. Nevertheless, "Civ.R. 8(A) requires only that a pleading contain a short and plain statement of the circumstances entitling the party to relief. A party is not required to plead the legal theory of recovery or the consequences which naturally flow by operation of law from the legal relationships of the parties." *Illinois Controls, Inc. v. Langham*, 70 Ohio St.3d 512, 526, 639 N.E.2d 771 (1994). "The rules make clear that a pleader is not bound by any particular theory of a claim but that the facts of the claim as developed by the proof establish the right to relief." *Id.*

{¶ 18} Here, appellants alleged an agreement whereby NZR would pay an additional two cents per gallon, of which Beck Suppliers would disburse one cent to pay the debt owed to the Beck Trust, and would hold the other cent as a deposit. Appellants alleged that Beck Suppliers failed to perform its promises to disburse the money to the Beck Trust, and to return the money held as a deposit, thereby supporting a claim for breach of contract. In addition, assuming appellants' allegations are true, even if a contract did not exist, then Beck Suppliers is still in possession of $136,000 that it did not earn, which would support a quasi-contract claim of unjust enrichment. *See Johnson v. Microsoft Corp.*, 106 Ohio St.3d 278, 2005-Ohio-4985, 834 N.E.2d 791, ¶ 20 ("Unjust

8.

enrichment occurs when a person 'has and retains money or benefits which in justice and equity belong to another.'").[3]

{¶ 19} As to Dean Beck, however, we find that dismissal is warranted because appellants have alleged no damages attributable to Beck's alleged fraud that are different than the damages attributable to the alleged breach of contract. *See Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 115 Ohio App.3d 137, 151, 684 N.E.2d 1261 (9th Dist.1996) ("[A]n action arising out of contract which is also based upon tortious conduct must include actual damages attributable to the wrongful acts of the alleged tortfeasor which are *in addition* to those attributable to the breach of contract." (Emphasis sic.)).

{¶ 20} Accordingly, appellants' second assignment of error is well-taken, in part.

{¶ 21} Turning to appellants' first assignment of error, appellants argue that the trial court erred when it dismissed their claim that Beck Suppliers improperly billed and invoiced its CAT liability to NZR. In their motion to dismiss, appellees argued that the count failed to state a claim for relief because, under the statute, Beck Suppliers was

---

[3] We recognize that appellants have not attached to their complaint a copy of the written instrument on which their claims are based as required by Civ.R. 10(D)(1). However, appellees do not raise this defect, and even if they did, it does not offer separate grounds for dismissal. *See Fletcher v. Univ. Hosps. of Cleveland*, 120 Ohio St.3d 167, 2008-Ohio-5379, 897 N.E.2d 147, ¶ 11 ("Because there is no language in Civ.R. 10(D)(1) that the account or written instrument is required to establish the adequacy of the complaint, any failure to attach the required copies is properly addressed by a motion for a more definite statement under Civ.R. 12(E). In short, a party can still plead a prima facie case in such circumstances even without attaching the account or written agreement to the complaint. Thus, the complaint will survive a motion to dismiss for failure to state a claim.").

9.

entitled to recover the amount attributable to the CAT. Appellants responded that the statute does not allow companies to "pass through" the tax as Beck Suppliers did.

{¶ 22} R.C. 5751.02(B) provides, in pertinent part:

> (B) The tax imposed by this section is a tax on the taxpayer and shall not be billed or invoiced to another person. Even if the tax or any portion thereof is billed or invoiced and separately stated, such amounts remain part of the price for purposes of the sales and use taxes levied under Chapters 5739. and 5741. of the Revised Code. Nothing in division (B) of this section prohibits:
>
> (1) A person from including in the price charged for a good or service an amount sufficient to recover the tax imposed by this section.

{¶ 23} In *Mosser Constr., Inc. v. Toledo*, 6th Dist. Lucas No. L-07-1060, 2007-Ohio-4910, we addressed the application of R.C. 5751.02(B) in a dispute between a contractor and the city. In that case, the parties entered into a contract that allowed the contractor to increase the contract price when a change in law occurred that increased its costs. The contract provided that part of the cost of the work included "Sales, consumer, use, and other similar taxes related to the Work, and for which contractor is liable." However, the contract excluded as part of the cost of the work "overhead or general expense costs of any kind." During the performance of the contract, the CAT was passed. The contractor sought reimbursement from the city for the additional "costs of work" of $30,000, arguing that the CAT was similar to a sales, consumer, or use tax. The

city disagreed, asserting that the CAT was a privilege tax, and therefore part of the contractor's overhead or general expense. The trial court granted summary judgment in favor of the contractor, and we affirmed.

{¶ 24} In our decision, we first noted that the contract allowed for changes to the cost of work by virtue of changes in the law. Second, the contract shifts the contractor's tax burden to the city in the event of unforeseen changes in the law if the tax was similar to a sales, consumer, or use tax. We then reasoned that "[s]ince the amount of tax owed is tied to the amount of a business's gross receipts, the tax is similar to a sale or consumer tax and not an overhead tax." *Id.* at ¶ 36. Third, we stated that R.C. 5751.02(B) does not prohibit the contractor from including the cost of the tax in the price it charges for its services. Finally, we determined that "although [the contractor] billed the city directly for the tax, an act otherwise prohibited by the statute, the billing was the result of the increased cost of work due to the new commercial activity tax." *Id.* Therefore, we held that the trial court correctly awarded summary judgment to the contractor.[4]

{¶ 25} R.C. 5751.02(B) was also recently addressed by the Eighth District in *Mohmed v. Certified Oil Corp.*, 2015-Ohio-2398, 37 N.E.3d 814 (8th Dist.), under facts that are substantially similar to the present situation. In that case, the contract between

---

[4] The rationale for our decision arguably was undercut by the Ohio Supreme Court in *Ohio Grocers Assn. v. Levin*, 123 Ohio St.3d 303, 2009-Ohio-4872, 916 N.E.2d 446, in which the court held that the CAT is a franchise tax on the privilege of doing business in the state, which although measured by the gross receipts on the sale of goods is not a tax on the sale of goods themselves. However, the categorization of the CAT as a franchise or sales tax, while relevant to the specific contract in *Mosser*, does not invalidate our conclusion that the CAT liability can be passed along as part of the contract price.

11.

the gasoline supplier and the gas station operators provided for the sale of gasoline at a fixed margin above the rack price "plus all applicable taxes." The supplier included its anticipated CAT liability on daily price notifications. However, the tax was not explicitly listed in the post-delivery invoices. After the end of the business relationship, the gas station owners commenced an action against the supplier for breach of contract based on its inclusion of a charge to cover its potential CAT liability. The trial court granted summary judgment to the supplier, and the Eighth District affirmed.

{¶ 26} On appeal, the Eighth District examined the supplier's inclusion of the charge for its CAT liability. The court recognized that "R.C. 5751.02(B) does not allow a taxpayer * * * to bill or invoice the CAT to another; however, the taxpayer is permitted to recoup its CAT liability by including it in the price charged for a good or service." *Id.* at ¶ 15. In that case, the supplier's price notification included the distributor's price, the specified contractual margin, freight cost, and the amount of the CAT in its subtotal for "price before taxes." The invoice, in contrast, only carried over the "price before taxes" without itemizing the CAT. The total price was then reached by adding an Ohio tax, federal tax, and oil spill tax to the "price before taxes." The Eighth District held that the supplier complied with the statute because the charge for the CAT was included in the price, and was not separately billed or invoiced.

{¶ 27} Despite its compliance with the statute, the Eighth District then determined that the supplier breached the contract because the contract did not call for inclusion of the CAT in the price. Instead, the price was limited to the distributor's price, plus a

12.

specified mark-up, plus freight costs, "plus all applicable tax." The court reasoned that the only way the supplier could include the charge for the CAT under the contract would be under the term "all applicable tax." However, including the CAT liability as an applicable tax is "exactly what is prohibited by the statute." *Id.* at ¶ 28. Thus, the court concluded that the supplier breached the agreement. *Id.* at ¶ 29 ("Although the statute would allow [the supplier] to recoup its CAT liability by contractually including it as a component of the price of the gasoline, our review of the Supply Agreement indicates the negotiated price only included a predetermined margin and freight cost—the parties could have contracted to include the CAT as a component of the price of the gasoline, but they did not. For [the supplier] to add the CAT to the prenegotiated price of gasoline in the middle of the contract's term would be a breach of the Supply Agreement.") Nevertheless, the court held that summary judgment for the supplier was appropriate because the claim was filed outside of the statute of limitations.

{¶ 28} Here, although framed that way by appellees, the issue is not whether Beck Suppliers was entitled to include its CAT liability as part of the purchase price pursuant to R.C. 5751.02(B). Rather, the issues are whether Beck Suppliers actually did include its CAT liability as part of the purchase price, and whether it was entitled to do so under the contract. Regarding these issues, there is simply not enough information in the complaint to engage in the same analysis as in *Mosser* and *Mohmed*. Relevant here, the complaint alleges:

7. Throughout their business relationship, from July 1, 2007 to January 19, 2012, in violation of the (sic) R.C. 5751.02(B), Beck Suppliers, Inc. billed and invoiced its CAT tax to NZR.

8. Beck Suppliers, Inc. wrongfully billed and invoiced to NZR, and collected from NZR in excess of Six Hundred Thirty-Seven Thousand and 00/100 ($637,000) Dollars.

From these allegations, it is not clear whether Beck Suppliers separately invoiced NZR for the CAT, whether the contracts included the CAT as part of the price, or whether the CAT was included as part of "all applicable taxes." Given that all reasonable inferences must be made in favor of the non-moving party, we can infer that the CAT charge was not included as part of the purchase price, but rather was assessed as part of "all applicable taxes," which is prohibited by R.C. 5751.02(B). Thus, the count would state a claim for relief for breach of contract.[5]

{¶ 29} Accordingly, appellants' first assignment of error is well-taken.

---

[5] Notably, although Beck Suppliers did not move for summary judgment as to appellants' first claim, the contracts attached to Beck Suppliers' motion to dismiss also do not resolve the issue. The sampling of contracts are not uniform as to what constitutes the price: an April 2006 agreement lists "commercial activity tax, if any" as part of the purchase price; a December 2006 agreement does not list "commercial activity tax," stating only "all applicable taxes;" and an August 2010 agreement lists "all applicable commercial activity taxes" as part of the price.

14.

## Conclusion

**{¶ 30}** For the foregoing reasons, we find that substantial justice has not been done the parties complaining, and the judgment of the Lucas County Court of Common Pleas is affirmed, in part, and reversed, in part.  The portion of the judgment dismissing the complaint as to Dean Beck is affirmed.  The portion of the judgment dismissing the complaint as to Beck Suppliers is reversed.  The matter is remanded for further proceedings on Counts 1 and 2 against Beck Suppliers.  Pursuant to App.R. 24, Beck Suppliers is liable for the costs of this appeal.

Judgment affirmed, in part,
and reversed, in part.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.       _____
                                              JUDGE

Thomas J. Osowik, J.

                                    _____

James D. Jensen, P.J.                                   JUDGE
CONCUR.

                                    _____

                                              JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.sconet.state.oh.us/rod/newpdf/?source=6.