[Cite as *Mitchell Dev. Co. v. Isaac Land Invests., Ltd.*, 2026-Ohio-2438.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

MITCHELL DEVELOPMENT CO., ET AL.

     APPELLANTS

V.

ISAAC LAND INVESTMENTS, LTD., ET AL.

     APPELLEES

COURT OF APPEALS NO. {48}L-25-00188

TRIAL COURT NO. CI0202501140

**DECISION AND JUDGMENT**

Decided: June 26, 2026

\* \* \* \* \*

John A. Borell, Jr., and Amber C. McAllister, for appellants.

Thomas Dillon and Evan J. Bunis, for appellees.

\* \* \* \* \*

**ZMUDA, J.,**

## I. Introduction

{¶ 1} Appellants, Mitchell Development Co. and Black Road Development Ltd. appeal from the July 15, 2025 judgment of the Lucas County Court of Common Pleas granting appellees Isaac Land Investments, Ltd. and Zac Isaac's motion to dismiss their

complaint seeking specific performance of a contract and alleging claims for breach of contract and fraud. For the following reasons, we reverse the trial court's judgment.

## II. Facts and Procedural Background

{¶ 2} On March 28, 2025, appellants filed a three-count complaint against appellees in the Lucas County Court of Common Pleas. The first count sought specific performance and a declaratory judgment related to a contract the parties entered into, while counts two and three alleged breach of contract and fraud claims, respectively. Appellants' complaint alleged the following facts relevant to this appeal.[1]

{¶ 3} On September 25, 2020, the parties[2] entered into a "Purchase and Sale Agreement" for the transfer of approximately 95 acres of real property located in Lucas County, Ohio. The terms of the contract and its subsequent amendments permitted appellants to enter onto and inspect the property to ascertain its suitability for commercial development. The agreement also permitted appellants, up to the date of closing, the ability to obtain financing for the construction of improvements on certain portions of the

---

[1] The Agreement references the transfer of two separate collective properties designated "Area A" and "Area B." The parties' motion practice only references the obligations and rights of the parties as they relate to Area A. As a result, we reference only those allegations and terms of the contract that describe the parties' obligations as they relate to Area A.

[2] Mitchell Development Co. entered into the agreement with Isaac Land Investments, Ltd. Mitchell subsequently assigned its interests in the agreement to appellant Black Road Development, Ltd. on March 13, 2025. Appellee Zac Isaac was not a named party to the agreement and, in a footnote to the motion to dismiss, challenges his designation as a proper party to this action. For ease of reference, we refer to aligned parties collectively as appellants or appellees and make no judgment as to the proper parties to this action as that issue is not before this court.

2.

property. Should it be necessary, appellants were also obligated to obtain, with appellees' assistance where necessary, any permits necessary for improving the property to its intended use. The agreement obligated appellees to use "commercially reasonable efforts" to secure "tax increment financing" from the local municipality for the permits and approvals necessary to construct a "Proposed Roadway" between one section of the property and an existing roadway. That process also required appellees to obtain approval for the construction of a railroad crossing from a non-party railway company. Appellees were also obligated to pay for the construction of the roadway.

{¶ 4} Following several amendments to the contract, the closing date was set for April 10, 2025. Appellants allege that as of March 11, 2025, they had informed appellees that they were "waiving all contingencies and inspections and [were] prepared to close on [their] purchase of the property." But on March 12, 2025, appellees notified appellants, in writing, that they were terminating the contract prior to closing because "the permits and approvals required for the construction of the Proposed Roadway (as defined in the Agreement) have not been secured." On March 28, 2025, appellants filed their complaint in the Lucas County Court of Common Pleas. Appellees responded to the complaint on May 29, 2025 with a motion to dismiss pursuant to Civ.R. 12(B)(6). In their motion, appellees argued that they had a unilateral right to terminate the contract, pursuant to Section 4.5.1 which states, in relevant part:

> [appellees] shall use commercially reasonable efforts to secure such tax increment financing and such permits and approvals required for the construction of the Proposed Roadway, provided, however, if [appellees are] unable to obtain such financing, permits, or approvals, it shall not be deemed a default by [appellees] hereunder and either party shall have the

3.

> right to terminate this Agreement by written notice to the other on the day prior to the Area A Closing Date[.]"

Appellees argued that appellants could not succeed on their contractual claims because section 4.5.1 provided them with the unilateral right to terminate the agreement upon the failure of the Proposed Railway condition, a right they exercised with their March 12, 2025 written notice. Appellees argue that since they terminated the agreement, they could not have breached the terminated agreement and, therefore, appellants could prove no set of facts that allowed them to succeed on their contractual claims for relief. Appellees further argued that Section 9.1 of the contract limited appellants' remedies for a breach of contract to only termination of the contract and the return of their deposit. Finally, appellees argued that appellants' declaratory judgment claim and fraud claim were merely restatements of their breach of contract claim and were barred as a matter of law.

{¶ 5} In their June 26, 2025 opposition, appellants argued that Section 4.5.1 of the agreement, seemingly granting both parties a unilateral right to terminate the agreement, could not be read in isolation. Instead, appellants argued that it must be read in conjunction with other provisions of the agreement that negated appellees' purported unilateral right to terminate the agreement. Specifically, appellants cite Sections 4.1 to 4.5 of the contract. They noted that each of these sections provides an opportunity for them to waive any conditions appellees did not satisfy, specifically noting that Section 4.5 generally provided that their obligation to purchase Area A were "subject to satisfaction of the following [including appellees' obligations under 4.5.1], which are

4.

determined by [appellants in their] sole and absolute discretion." As a result, appellants argue that Section 4.5.1's purported grant of a unilateral termination right to appellees remained subject to their claim of a unilateral final waiver of appellees' obligations contained therein and, therefore, could not serve as a bar to their contract claims. They also argued that the limitation of remedies in the agreement was ambiguous and required discovery of extrinsic evidence to determine the parties' intent, precluding resolution of a question of fact on a Civ.R. 12(B)(6) motion to dismiss. Finally, appellants argued that their fraud claim alleged that appellees made fraudulent misrepresentations outside of their obligations under the contract. These representations, they contend, were fraudulent and resulted in damages outside those incurred from the breach of contract claim, showing that the fraud claim was not merely a restatement of their breach of contract claim.

{¶ 6} On July 15, 2025, the trial court granted appellees' motion to dismiss. It held that the plain language of Section 4.5.1 of the agreement gave appellees a unilateral right to terminate the agreement upon written notice that it would not satisfy its obligations under that section. Since appellees provided that notice to appellants, the court held that appellants could not pursue their breach of contract claim or declaratory judgment claim on the terminated contract.[3] Further, the court held that appellants' fraud

---

[3] The trial court did not address appellees' arguments that appellants' declaratory judgment action could not proceed as it was merely a restatement of their breach of contract claim. Appellees did not file a cross-appeal assigning error to the trial court's failure to address that argument. As a result, we will not address that argument for the first time in this appeal. *See Am. Eagle Investments, Inc. v. Marco's Franchising, LLC,* 2024-Ohio-3038, ¶ 40 (6th Dist.).

5.

claim was merely a restatement of their breach of contract claim and, therefore, had to be dismissed as a matter of law.

### III. Assignments of Error

{¶ 7} Appellants timely appealed and assert the following errors for our review:

1. The trial court erred in granting Defendant's motion to dismiss as the trial court incorrectly interpreted Section 4.5.1 of the Purchase and Sale Agreement as granting Defendants an independent right to terminate the agreement, even after Plaintiffs had waived all contingencies for Plaintiffs' benefit. This interpretation was contrary to the intent of the parties and established principles of contract construction.

2. The trial court erred in dismissing Plaintiff's breach of contract claim because the trial court resolved ambiguous contract provisions and factual disputes at the pleading stage, rather than allowing discovery and fact development.

3. The trial court erred in holding Plaintiffs' fraud claim failed to state a claim and was duplicative of Plaintiffs' breach of contract claim, despite Plaintiffs' allegations of a present intent not to perform and damages that were distinct from a breach of contract claim.

We address these errors in turn.

### IV. Law & Analysis

**a. The trial court erred in finding that appellees' had a unilateral right to terminate the contract when the contract was ambiguous.**

{¶ 8} In their first assignment of error, appellants argue that the trial court erred in finding that the contract gave appellees a unilateral right to terminate the agreement and granting the motion to dismiss. We review the trial court's granting of a Civ.R. 12(B) motion to dismiss for failure to state a claim de novo. *Fisher v. Smith & Lehrer Co., L.P.A.,* 2024-Ohio-1177, ¶ 11. "A Civ.R. 12(B)(6) motion to dismiss is procedural and tests the sufficiency of the complaint." *Id.,* citing *NZR Retail of Toledo, Inc. v. Beck*

6.

*Suppliers, Inc.,* 2016-Ohio-3205, ¶ 12 (6th Dist.).  "To dismiss a complaint under Civ.R. 12(B)(6), it must appear beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to the relief sought." *Id.,* citing *Ohio Bur. of Workers' Comp. v. McKinley,* 2011-Ohio-4432.  "In considering the motion, the court must accept as true all factual allegations in the complaint and construe any reasonable inferences in favor of the non-moving party." *Id.,* citing *Alford v. Collins-McGregor Operating Co.,* 2018-Ohio-8, ¶ 10.  "Where documents are attached or incorporated into the complaint, they may be considered under Civ.R. 12(B)(6), but the court is not required to accept as true factual allegations in the complaint contradicted by those documents." *Krohn v. Ostafi,* 2020-Ohio-1536, ¶ 10 (6th Dist.).

{¶ 9} The issue on appeal is whether appellants' complaint alleged facts that could entitle them to the requested relief.  Specifically, we must determine whether the parties' contract reflected their intent to grant appellees the unilateral right to terminate the contract, precluding appellants' ability to recover on their contractual claims.  Appellants argue, essentially, that because appellees' obligations under Section 4.5.1 were intended to benefit them, that their ability to waive that benefit superseded appellees' right to terminate the agreement as a matter of law.   We do not reach this proposition, however, as our de novo review finds that the parties' contract was ambiguous on this issue and, therefore, the trial court erred in determining the parties' intent at this stage of the litigation.

7.

{¶ 10} When reviewing a contract, we presume that the intent of the parties is reflected in the plain language of the contract, and we seek to give effect to the parties' intent by examining the contract as a whole. *Beverage Holdings, L.L.C. v. 5701 Lombardo, L.L.C.,* 2019-Ohio-4716, ¶ 13, citing *Westfield Ins. Co. v. Galatis*, 2003-Ohio-5849, ¶ 11; *Sunoco, Inc. (R & M) v. Toledo Edison Co.,* 2011-Ohio-2720, ¶ 37. Where the language of a contract is plain and unambiguous, "we enforce the terms as written," and will "not turn to evidence outside the four corners of the contract to alter its meaning." *Id.* "[E]xtrinsic evidence cannot be considered to give effect to the contracting parties' intentions when the language of the contract is clear and unambiguous." *Sunoco* at ¶ 66, citing *Shifrin v. Forest City Ents., Inc.*, 64 Ohio St.3d 635 (1992), syllabus. However, "[w]hen a provision at issue is susceptible of more than one reasonable interpretation, ambiguity exists" and the parties' intent may be proven through extrinsic evidence. *Valentine v. Cedar Fair, L.P.,* 2021-Ohio-2144, ¶ 47 (6th Dist.) (reversed on other grounds). Interpretation of an ambiguous contract is a question of fact. *Slack v. Strozier,* 2024-Ohio-286, ¶ 21 (6th Dist.).

{¶ 11} Section 4.5.1 of the contract required appellees to use "commercially reasonable efforts" to obtain certain financing and permitting approvals related to the property. The contract describes the consequence of appellees' failure to satisfy those conditions, stating, in relevant part:

> if [appellees are] unable to obtain such financing, permits or approvals, it shall not be deemed a default by [appellees] hereunder and either party shall have the right to terminate this Agreement by written notice to the other on the day prior to [closing], upon which the title company shall immediately release the deposit (less the independent consideration) to

8.

[appellees] and neither party shall have any further rights or obligations to the other under this agreement. [Appellants] may elect to waive the requirements and/or contingencies regarding such proposed roadway and proceed with this agreement.

We find that this language is subject to two reasonable interpretations. The first, as appellees' argue, is that once it failed to obtain the approvals described in that section it had the unilateral right to terminate the contract through written notice to appellants. This interpretation is reasonable as the waiver rights granted to appellants in the next sentence do not *explicitly* repeal appellees' right to terminate the agreement if appellants waived the approval conditions.

{¶ 12} The second reasonable interpretation, as appellants argue, is that appellees cannot terminate the agreement due to their own failure to obtain the "financing, permits or approvals" required by Paragraph 4.5 if appellants had exercised their right to waive the unsatisfied conditions and to "proceed with this agreement."[4] This language allows for the reasonable conclusion that appellants have the unilateral right to proceed with the agreement if they waived the conditions.

{¶ 13} Put simply, the contract provides each party with contrasting, unilateral options that are in direct conflict with one another over the same circumstance—that is, appellees' failure to satisfy the conditions identified in Section 4.5.1 of the agreement. The contract simultaneously grants both parties the right to terminate upon the failure of

---

[4] We note that Section 4.4 similarly provides that if appellees fail to comply with their obligations under Section 4.5, appellants had the right to either terminate the agreement or "waive the requirements and/or contingencies regarding such due diligence review and proceed with this Agreement."

9.

those conditions, while also granting appellants the authority to waive those same conditions and proceed to closing. The contract is ambiguous because it does not specify which right takes precedence.

{¶ 14} As there is more than one reasonable interpretation of the impact of appellees' failure on the parties' rights, the trial court could not have determined the intent of the parties through its acceptance of one of those interpretations over another. While ensuing litigation could resolve this ambiguity, it was improper for the trial court to resolve this question of fact on appellees' Civ.R. 12(B)(6) motion to dismiss. *Cedar Fair* at ¶ 52, citing *Cooper v. Highland County Bd. of Commissioners,* 2002-Ohio-2353, ¶ 9 (4th Dist.) (holding that trial courts cannot interpret ambiguous contracts to resolve a Civ.R. 12(B)(6) motion to dismiss). Accordingly, the trial court should have permitted the matter to proceed and allowed the parties to introduce extrinsic evidence to resolve this question of fact before determining the parties' intent. The failure to do so constitutes error and we find appellants' first assignment of error well-taken.

**b. The limitation of remedies term in the parties' contract is ambiguous.**

{¶ 15} In their second assignment of error, appellants argue that the trial court erred in finding that the limitation of remedies term in the parties' agreement warranted dismissal of their claims. We agree.

{¶ 16} Section 9.1 of the agreement states:

If [appellees] shall be in default of any material provision under this agreement on or before the applicable closing date and such default is not cured within five business days after written notice of such breach from [appellants] to [appellees], [appellants] shall be entitled, as its sole remedy, either to terminate this agreement and receive a return of the deposit (less

10.

> the independent consideration), and the parties shall be relieved of all further obligations and liabilities hereunder except those which expressly survive termination of this agreement. [Appellants] hereby waive any and all other remedies to which it may otherwise have at law or equity.

The trial court determined that this language limited appellants' available remedies in the result of appellees' breach of the agreement to termination of the contract and the return of their deposit. Appellants argue that this section has a missing term as it establishes a choice of remedies through its use of "either" but does not provide the terms of a second, alternative remedy. This missing term, they argue, could have been provided through extrinsic evidence.

{¶ 17} Appellants are correct that a missing term in a contract can be established through extrinsic evidence. *Gasel Transp. Lines, Inc. v. General Sec. Ins. Co.,* 2001-Ohio-2442 (4th Dist.) ("[I]f a term cannot be determined from the four corners of a contract, factual determination of intent or reasonableness may be necessary to supply the missing term. * * * Thus, where a contract is missing an essential term * * * parol evidence is admissible so that the court may construe an ambiguous or missing term."). The question before this court, then, is whether the contract is missing a term such that the intent of the parties cannot be established from the four corners of the agreement, creating a factual question that cannot be resolved on a motion to dismiss. *St. Paul's Lutheran Church v. Brooks,* 2008-Ohio-2481, ¶ 16 (6th Dist.) ("[I]f a term cannot be determined from the four corners of a contract, a factual determination of intent or reasonableness may be necessary to supply the missing term.").

11.

{¶ 18} The plain language of Section 9.1 suggests that the parties may have intended for appellants to have alternative remedies through the use of the word "either." The trial court's judgment is silent as to how it determined the parties' intent as to appellants' available remedies in light of the plain language suggesting that there was an additional term missing from Section 9.1. As a result, the trial court erred in finding that appellants were limited to only the remedy expressly described in Section 9.1 of the agreement when that issue was a question of fact. *Id.*

{¶ 19} Appellees seek to avoid this result by arguing that there was no missing term since Section 4.5.1 of the agreement provides the same limited remedy—return of the security deposit—as the single remedy identified in Section 9.1. While this argument lends support to appellees' reasonable interpretation, it does not resolve the ambiguity created by the unexplained use of the word "either" in Section 9.1. It is also reasonable, at this early stage of the proceedings, to interpret Section 9.1 as ambiguous because it seemingly lacks an unnamed alternative remedy to the one identified in Section 4.5.1.

{¶ 20} The plain language of Section 9.1 suggests that the parties may have intended to offer appellants an unnamed, alternative remedy in the event of appellees' breach. Whether that was the parties' intent, and if so, what the additional remedy might have been, are questions of fact that can be resolved through consideration of parol evidence, not through a motion to dismiss. For these reasons, we find appellants' second assignment of error well-taken.

12.

### c. Appellants' fraud claim was distinct from their breach of contract claims.

{¶ 21} In their third assignment of error, appellants argue that the trial court erred in dismissing their fraud claim as a mere restatement of their breach of contract. It is undisputed that "a claim for fraud that duplicates a contract claim is not viable." *Pierre Investments, Inc. v. CLS Capital Group, Inc.,* 2022-Ohio-4311, ¶ 37 (6th Dist.). When the factual basis for a breach of contract and fraud claim are "intertwined," the tort claim fails unless the plaintiff shows that there are actual damages attributable to the defendant's conduct that are "separate from those attributable to the breach of contract claim." *Id.,* citing *U.S. Bank N.A. v. MMCO, LLC,* 2021-Ohio-4605, ¶ 53 (8th Dist.). For a tort claim to succeed, there must be a breach of a duty that was owed "even if no contract existed." *Id.,* citing *Labounty v. Big 3 Automotive,* 2019-Ohio-1919, ¶ 88 (6th Dist.).

{¶ 22} We find that appellants complaint alleged facts that state a claim of fraud based on appellees' conduct independent of their obligations under the contract. Specifically, appellants alleged that that after they learned that appellees could not obtain the approvals for the construction of the roadway in early 2023, they informed appellees that they intended to waive the requirements and proceed with their inspections of the property to determine its suitability for commercial development. Appellants also allege that appellees "made specific representations to [appellants that they also] intended to proceed with the agreement even though [they] had not obtained the permit for the proposed roadway." Appellants further allege that they informed appellees that they

13.

would incur additional expenses developing the land based on their representations that they intended to proceed with the sale and that appellees still maintained that they too would proceed with the agreement.

{¶ 23} A plain reading of appellants' allegations shows that, if proven, they could establish a fraud claim independent of the parties' contractual obligations. Appellees had no contractual obligation to comment on their intentions upon realizing that they would not satisfy the conditions identified in Section 4.5.1. As alleged in the complaint, appellees chose to indicate that they would not exercise the termination rights they believed existed under the contract and appellants incurred additional costs as a result of that representation. Further, appellants were not obligated to conduct the inspections pursuant to the agreement. Indeed, the agreement allowed for inspections to determine suitability for the intended development but section 4.7 *conspicuously* notes that the property is being sold "as is, where is." Appellants were under no obligation to inspect the premises and, under the terms of the agreement, could have simply purchased the property without inspection. They alleged that the costs incurred for inspecting the property were based on appellees' representations that they intended to proceed with the sale despite knowing they would not satisfy the conditions of Section 4.5.1. Appellants' fraud claim, then, is not only seeking damages related to obligations they performed pursuant to the contract but also sought damages for work they performed on the property based on appellees' alleged false representations that they would not terminate the agreement.

14.

{¶ 24} Alleged damages related to appellants' improvement of the land based on appellees' representation that they would not terminate the agreement would fall outside of any recovery appellants could recoup in their breach of contract claim since they are not based on a claimed breach of appellees' obligations. Instead, the damages, if proven, would be based on representations made outside of appellees' contractual obligations. Since the damages alleged related to representations unrelated to their contractual obligations, appellants could succeed on their fraud claim independent of their breach of contract claim. As a result, appellants' fraud claim is not a restatement of their breach of contract claim. *Pierre Investments* at ¶ 37. For these reasons, we find that the trial court erred in dismissing appellants' fraud claim and find appellants' third assignment of error well-taken.

## V. Conclusion

{¶ 25} For these reasons, we find appellants' first, second, and third assignments of error well-taken. The trial court erred in dismissing appellants' breach of contract and declaratory judgment claims based on its interpretation of ambiguous contract terms regarding the parties' respective rights under Section 4.5.1 of the contract. Further, the trial court erred in finding that Section 9.1 of the agreement limited appellants' remedies despite an ambiguous reference to an additional, alternative remedy. Finally, the trial court erred in finding that appellants' fraud claim was not independent of their breach of contract claim as the allegedly fraudulent misrepresentations were unrelated to appellees' obligations under the contract and appellants incurred damages unrelated to appellees' alleged breach of the contract.

15.

**{¶ 26}** As a result, we reverse the July 15, 2025 judgment of the Lucas County Court of Common Pleas granting appellees' motion to dismiss and we remand this matter for further proceedings. Appellees are ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment reversed<br>and remanded.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27.

Thomas J. Osowik, P.J. _____

_____
JUDGE

Christine E. Mayle, J. _____

_____
Gene A. Zmuda, J. _____ JUDGE
CONCUR.

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.